ages at six cents." On this verdict judgment was entered adjudging "that the plaintiffs [naming them] recover of the defendants [naming them] the possession of the real property described in the complaint, and, further, that they recover of the defendants the sum of six cents damages for the withholding thereof," etc. Defendants appeal from this judgment.

We think that there was a mistrial here, and that the judgment cannot stand, owing to the form of the verdict which was rendered. The jury found, as above stated, that plaintiffs were "entitled to the possession of the strip of land described in the complaint." If we refer to the complaint to interpret this verdict, we find no "strip of land" therein described. The only real properties referred to in the complaint are "the premises known as 'No. 185 York Street,'" being 25 by 100, which plaintiffs allege ownership of, and "the adjoining lot on the west side of the above-described premises," alleged to belong to the defendants. Nor does the judgment help the verdict, for that merely adjudges that "plaintiffs recover of the defendants the possession of the real property described in the complaint." This judgment, literally construed, would entitle plaintiffs to possession of their own lot and to that of the defendants. If execution to enforce this judgment was issued to the sheriff, it would furnish him no clew to carry it out. He could not, of course, refer to the record to find out that all that it was really intended that he should do was to put plaintiffs in possession of a narrow triangular strip in the rear of the premises, one foot wide at the base, and running to a point on the side of their lot adjoining the lot of defendants. It was never intended, in a judgment of ejectment, that the sheriff should employ surveyors to determine just what premises he should put the prevailing party in possession of; and yet an attempt to enforce this judgment would require the sheriff to locate his starting point, and himself run the lines of plaintiffs' lot. The verdict should have been corrected in the first instance so as to define exactly what land plaintiffs were entitled to possession of. This was not done, and, of course, the verdict cannot now be amended or corrected. The judgment must be reversed, and a new trial ordered, with costs to defendants to abide the event.

---

(8 Misc. Rep. 48.)

### CRAWFORD v. WILSON & BAILLIE MANUF'G CO.

(City Court of Brooklyn, General Term. April 24, 1894.)

1. NEGLIGENCE—CHILD PLAYING ON SIDEWALK.
   It is not negligence, as matter of law, for a child to play on the sidewalk.
2. SAME—EXCAVATION IN STREET.
   Where guards placed around excavations made by defendant in a street in a thickly-settled neighborhood are liable to be thrown down by boys, it is defendant's duty to station a man to see that the guards are kept up.

Appeal from trial term.

Action by John W. Crawford, Jr., against the Wilson & Baillie Manufacturing Company to recover damages for the death of plain-

tiff's intestate.    From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.    Affirmed.

Argued before CLEMENT, C. J., and OSBORNE, J.

Chas. C. Nadal, for appellant.

John C. Robinson, for respondent.

CLEMENT, C. J.    This action was brought by the plaintiff, as administrator of his son, who was eight years old at the time of his death, to recover damages under the statute.    It was proven that the defendant, as contractor with an elevated railroad company, by its employés, dug 10 excavations on the sidewalk, about 7 feet deep and 6 feet square, in the block on Third avenue between Forty-Eighth and Forty-Ninth streets.    These holes were lawfully made for the foundations of the columns of an elevated railroad in course of construction.    On March 20, 1893, the deceased and other boys were riding in a boy's wagon between half past 5 and 6 o'clock. There is a down grade at the point in question, and the wagon was allowed to run down of its own weight.    The boy was riding in this way until the wagon came near the hole, when it took a sudden turn, and both wagon and boy were thrown into the hole.    There was no protection of any kind around the hole when the boy fell in. The boy died on the following day from the results of his injuries.

We are of opinion that the deceased was not guilty, as matter of law, of contributory negligence, and that such question was properly submitted to the jury.    He was, at the time of his injury, only 8 years and 21 days old.    It is not negligence, as matter of law, for a child to play upon the sidewalk, even if it is so young as to be non sui juris.    Huerzeler v. Railroad Co., 139 N. Y. 490, 34 N. E. 1101.    In view of the want of experience of the deceased, it is clear that the case could not be dismissed on the ground of contributory negligence.

The question whether or not there was negligence on the part of the defendant was also one of fact.    The defendant, if it caused excavations to be made in a sidewalk, was bound to take reasonable precautions for the security of travelers.    The law as to interference with the highway is strict.    Judge Earl said in the case of Sexr v. Zett, 44 N. Y. 430, 432:

"It is a well-settled rule that a person who interferes with a sidewalk in a city, and leaves it in a dangerous condition, is liable for injuries caused thereby, whether he knew it to be dangerous or not, and irrespective of any permission of public authorities to do the work from which the injury arises."

There is no dispute in the case that at the time the boy fell into the hole there was no protection around it, although, as before stated, it was seven feet deep and six feet square, and located in the sidewalk.    The witnesses for the defendant testified that it had been protected by barrels and planks, and the defendant's counsel claims—though there is no direct evidence—that other boys had pushed the planks and barrels into the hole shortly before the deceased fell in.    Thomas Ward, the foreman of the defendant, says

he saw the excavation at 4 o'clock, and it was then protected by two barrels and three planks, and on cross-examination testified that the edge of the hole between the barrels had no protection except such as was afforded by a plank laid on them at a distance of three and one-half feet from the ground; and he also testified that there was no special watchman detailed to watch these holes in the daytime. Mrs. Tiedemann testified that she lived directly opposite the place of the accident, and at noon of that day there was no protection around the hole. This testimony was properly admitted, in view of the testimony of the defendant's witnesses, for they went back three days to prove that the hole had been guarded all the time. There was no witness for the defendant who testified that he saw the hole guarded after 5 o'clock. The accident happened perhaps as late as a quarter before 6. The foreman of the defendant said that they had great trouble with boys, who threw down the guards and stole the barrels. It would seem that, if the guards were liable to be thrown down by boys in a thickly settled neighborhood, it was incumbent on the defendant to have a man especially detailed in the daytime to see that the guards were kept up. The defendant did not discharge its duty when it put up two barrels and three planks around the hole in question, even if that was a sufficient warning to the public. The defendant was bound to exercise care to see that the barriers were kept up all the time. If boys were in the habit of removing the guards, then the defendant was bound to be more vigilant. When the plaintiff proved that there were no barriers at the time the child was injured, he made out a prima facie case. That fact was afterwards admitted by all the witnesses for the defendant. Whether there were guards to the hole in question was a question of fact for the jury, and whether or not they had been removed by the defendant's employés in the course of their work was also a question of fact. If the jury found that the barriers had been removed by boys, whether the defendant did or did not have a reasonable time to replace them was a question of fact. The trial judge instructed the jury correctly on this point.

The exceptions at folios 102 and 103 cannot help the defendant. No proof was given as to the amount of the doctor's bill, and, as the child only lived one day, counsel seems to have waived it. Whether plaintiff did or did not pay the physician was properly admitted, and whether he paid the undertaker also was a proper question. If the proper evidence was not afterwards supplied, the counsel for defendant should have called the attention of the court to the fact, and have asked that the testimony be struck out, or that the jury be instructed not to give damages for the undertaker's bill. If the exception was well taken as to the bill for funeral expenses, it would simply lead to a reduction of the verdict by the amount of such bill, and not to a reversal. On the whole, we think that the defendant cannot now complain, for the court would have charged the jury, if requested, that the undertaker's bill should not be included in the damages. Judgment and order denying a new trial affirmed, with costs.