was no authority to either partner to sign any other name to partnership paper. Parties dealing with the firm were put on notice of the firm name, and the execution of the notes in a name not that authorized by the partnership articles was sufficient to put the plaintiff to his inquiry as to its reason, and to require him to show the authority of Green to sign the note with the name of "Iba & Green."

Turning now to the negotiable instruments law, section 98 reads:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

The production of the note was prima facie evidence that the plaintiff was holder in due course, but, as it was shown that Brockmann's title was defective, the burden still was on the plaintiff to prove that he or Brockmann acquired the note in due course. This burden was not lifted by the meager proof that Brockmann held it a few days, the number of days not being proved. Non constat that the days did not exceed the three months provided in the note for its time. The plaintiff or Brockmann could have testified to the exact date. Brockmann, though a witness, was not asked to be more specific, and the plaintiff was not called as a witness, and we think the plaintiff's bona fides was not established. For these reasons, the judgments must be affirmed.

Judgments of the municipal court affirmed, with costs. All concur; BARTLETT and HIRSCHBERG, JJ., in result.

---

### SAVERIO–CELLA v. BROOKLYN UNION EL. R. CO.

(Supreme Court, Appellate Division, Second Department. November 23, 1900.)

NEGLIGENCE—LEAVING MACHINERY UNATTENDED—INJURY TO CHILD.

Servants of defendant who were engaged in the construction of an elevated railroad left a windlass unattended on the sidewalk of a thickly-populated street, but they had securely tied the machine, so that it could not be operated, and the rope and handles used to revolve the drum thereof were removed. The rope which tied the machine was afterwards cut by boys, who procured a new rope and revolved the drum; and plaintiff, who was a child 5 years old, was injured by being caught in the cogwheels while climbing on the machine while it was thus operated. *Held*, that the defendant was not guilty of such negligence in leaving the machine in the street as would sustain a judgment for plaintiff.

Appeal from trial term.

Action by Frank Saverio-Cella, an infant, by Frank Saverio-Cella, his guardian ad litem, against the Brooklyn Union Elevated Railroad Company, for injuries caused by defendant's negligence. From a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and JENKS, JJ.

John L. Wells, for appellant.
Isaac M. Kapper, for respondent.

JENKS, J. ·The defendant, in its work of railroad construction, placed its windlass on the sidewalk of a city street, in front of the house of the plaintiff, in a populous quarter, where children were accustomed to play in the street. The windlass was about four feet high and three feet wide, working with a drum, and with a small and a large cogwheel. The defendant left it about 10 o'clock on Sunday morning, so tied that the drum and cogwheels could not be turned unless the tiers were removed. On Monday evening lads of that neighborhood cut the rope or cord tiers, procured and wound a child's skipping rope around the drum, and then pulled and relaxed such rope, thus revolving the drum and giving play to the cogwheels. At this time the plaintiff, aged between 5 and 6 years, clambered up to the top of the windlass, caught his foot in the revolving cogwheels, and suffered an injury. The question of a nuisance per se is not in this case. The defendant testified that it was using the windlass in a proper place, and for a proper purpose. This was not questioned by the plaintiff, who upon the trial conceded that the windlass "was properly and lawfully engaged upon this public street in the construction of this elevated railroad structure; that the windlass in question was a proper appliance to be used by the defendant, with other mechanical appliances, in elevating materials used in the construction of this elevated railroad, which they might lawfully use in a proper way, and used upon the street surface; that it was an appropriate appliance to hoist with; that the defendant might properly employ the machine in hoisting material to the top of the structure." It does not appear that the work was completed. The question of notice to the defendant after the fastenings were removed from the windlass is not raised. But the plaintiff declares upon the negligence of the defendant in leaving the machine unguarded and unprotected. The appellant confines his attack upon the judgment to the single point that the trial court should have dismissed the complaint on the ground of the plaintiff's failure to prove negligence. There is no dispute but that the defendant left the windlass secured by a rope or a cord so that the drum could not be revolved or the cogs be put in play without first removing the tiers, or that the rope used by the defendant to revolve the drum was not left attached to the drum, or that the handles that worked the drum had been put away by the defendant. The only positive evidence as to the removal of the fastenings is that they were cut by the lads on the evening of the accident. Instead, then, of leaving an alluring or enticing machine, unguarded and unfastened, dangerous or that could be made dangerous simply by the mischief or meddling natural to young lads at play, the defendant tied it up, removed the drum rope, and unshipped the handles. Before it was made the instrument of this accident, several distinct acts of intervention were necessary, and were done: First, the tying rope was cut by the boys; second, the defective machine, so to speak, was completed by the lads getting a skipping rope 16 feet long and

winding it around the drum; third, the drum was put in motion and its power lent to the cogwheels by several of the lads manning their improvised drum rope, and pulling on the rope and then relaxing the pull, so as to produce a reverse revolution of the drum. The testimony is that at this time the plaintiff could only have met injury by climbing up to the top of the windlass. The case is very like that of Bailey v. Neal (Q. B. Div.) 5 Law T. 20, where a school boy 9 years of age tried to clamber on a street roller in the street, with the wheels immovable when secured by a rope, but made movable by the cutting of the rope by another lad. The court dismissed the case, and on appeal the court (Coleridge, L. C. J., and Grantham, J.) dismissed the appeal, saying that the absence of any negligence was demonstrated by the fact that the shafts were tied, but, even if they had not been, it was at least very doubtful if there was any negligence in leaving the machine where it was. In reviewing this decision, Mr. Bevan, in his work on Negligence, says:

"From the point of view that contributory negligence is not to be imputed to children in certain circumstances, it would, at first sight, appear immaterial in what condition the machine was placed on the highway, if its being there arose from negligence. This, however, is not so. It is one thing to impute liability when the intervening agency that sets the mischief at work is the mere ordinary thoughtlessness and ignorance of children, who might be expected to play with an object like a roller left in their way; and it is quite another to contemplate the cutting of a strong rope,—an act that is scarcely an ordinary and natural incident attendant on the neighborhood of young children."

See, too, Jonasch v. Gaslight Co. (Super. N. Y.) 4 N. Y. Supp. 542, affirmed in 117 N. Y. 641, 22 N. E. 1131; Kolsti v. Railway Co., 32 Minn. 133, 134, 19 N. W. 655; Haesley v. Railroad Co., 46 Minn. 233, 236, 48 N. W. 1023; Bates v. Railway Co. (Tenn. Sup.) 15 S. W. 1069. I think the principle as applicable is not affected by proof that the rope that bound the windlass wheels was stout or slender. The wheels were not put in play, in that the fastening was tugged at and worn away or snapped asunder, but because it was cut through. In Bates v. Railway Co., supra, the supreme court of Tennessee, in passing upon a case where a boy was injured by a turntable freed by another boy withdrawing the bolt, said:

"If the fastening was sufficient, if undisturbed, to hold the turntable securely in place, the fact that it could be unfastened by a great or slight exertion of strength directed immediately to that purpose could not properly be considered as evidence of negligence of the defendant."

The law requires that the injury must so directly result from the wrongful act "that, according to common experience and the usual course of events, it might, under the particular circumstances, have reasonably been expected." Jex v. Straus, 122 N. Y. 293, 25 N. E. 478. If the result was not within the ken of reasonable prudence and foresight, then proximate cause is not established. Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009, and authorities cited. And where the facts present a clear case the question becomes one of law. Id. I think that a man of reasonable prudence and care, under the circumstances of this case, might not reasonably have expected that the rope might be cut, and the machine might

thereupon be completed by a new drum rope, and that thereupon the drum rope might be manned and tugged upon by a gang of lads so that the wheels might be put in motion, and that thereupon at such time a lad playing in the street might so clamber upon the machine as to come in contact with the revolving cogs; and so the law frees the defendant. The citation of the text of Shearman & Redfield by the learned counsel is not at variance with my conclusion. It is not necessary to invoke the authority of Mangan v. Atterton, L. R. 1 Exch. 239, for in that famous case the machine was unguarded and workable. Examination of Clark v. Chambers, 3 Q. B. Div. 327, does not show that Mangan v. Atterton was distinctly overruled. Bevan, Neg. 146. In any event the distinction is fundamental between a machine left free and a machine left secure; and so the doctrine of Lynch v. Nurdin, 1 Q. B. 29, and the many similar cases, has no application here. In Crawford v. Manufacturing Co., 8 Misc. Rep. 48, 28 N. Y. Supp. 514, there was no protection of the excavation at the time the lad fell into it; and there was the question as to whether the barriers were removed by the defendant's employés or by third parties, and the doctrine of notice was also involved. In Ramsey v. Contracting Co., 49 App. Div. 11, 63 N. Y. Supp. 286, we said that the rails, as originally piled, were so insecure as to justify a finding that the accident was due to that fact. There was no prop, guard, or fastening of any kind, beyond the weight or inertia of the rails themselves, and the rail was left so insecure that the mere weight of a small child dislodged it. We held that it was within the range of reasonable probability that pedestrians would step upon the pile of rails in crossing the street, or that children would play about or rest upon them. That decision might be pertinent in this case if the windlass had been left on the street, unsecured in any way, and in complete and workable order, ready to become dangerous merely at the touch or by the application of the force of a lad or lads at play. I think that the judgment must be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.