[Civ. No. 2420. Third Appellate District.—March 7, 1922.]

## JOHN SOLOMON, Respondent, v. THE RED RIVER LUMBER COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—BREAKING OF PLAYGROUND APPARATUS—DEATH OF SCHOOLBOY—INAPPLICABILITY OF DOCTRINE OF TURNTABLE CASES.— A lumber company cannot be held liable under the doctrine of the "turntable cases" for damages for the death of a schoolboy caused from the breaking of a playground swinging apparatus which the company had constructed on the school grounds at the instance of the school trustees, since such contrivance, while attractive to children and intended to be so, was not naturally dangerous, and being constructed for their use and for no other purpose, no negligence could be imputed to the failure to use proper care to prevent its use by them.

[2] ID.—ACTION FOR DEATH—APPLICABILITY OF DOCTRINE—MISLEADING INSTRUCTION.—In an action for the death of a schoolboy caused from the breaking of a swinging apparatus which the defendant had constructed on the school grounds at the request of the school trustees, the jury were confused and misled by the modification of a requested instruction charging them that no damage could be found if they believed that the apparatus was manufactured sufficiently strong for the purpose for which it was intended to be used, by adding thereto the qualification, "unless you find such appliance constituted an attraction calculated by its nature to attract or lure children of

immature mind to meddle with it or otherwise interfere with or make use of it, and as a fact did so to their injury by reason of the inherent danger attendant to the setting of such appliance in motion, as otherwise instructed you herein."

[3] Id.—Defective Condition of Tree Supporting Swing—Knowledge of Defendant—Evidence.—Where in such action the plaintiff relied upon the claim that the tree stump which supported the swinging apparatus was unsound and unsafe and that the defendant was charged with knowledge of its condition, the burden was upon the plaintiff to support such claim, and evidence that the tree had dried out a year or longer after the swing had been constructed was not sufficient to support the contention that it was defective at the time the apparatus was installed.

[4] Id.—Keeping of Swing in Repair—Duty of School Authorities. Such evidence cannot be regarded as sufficient to disclose the negligence of the defendant upon the theory of a continuing obligation upon its part to keep the swing in safe condition, since such duty devolved upon the school district under the general mandate to maintain, supervise, and repair public school buildings and premises.

[5] Id.—Death from Intervening Act of Third Person—Use of Swing in Manner Different from Original Construction.—Where in such action it was shown that at the time of the accident the swing was not being used in the manner provided in its original construction, but that the children had placed planks in the ropes and thereby imposed an additional burden on the stump of the tree which supported the swing, the death from the breaking of the apparatus must be held to have been due to an intervening act of a third person, in the absence of evidence that the danger was not increased by the addition of the planks.

[6] Id.—Change in Use of Apparatus—Pleading—Amendment to Conform to Proof.—Where in the trial of such action there was evidence that the boards were put upon the swing by the teacher instead of by the pupils, as alleged in the answer, it was error to refuse the defendant leave to amend its answer by substituting the words "some person" for the words "pupils attending said public school" in reference to the allegation relating to the change of the apparatus.

APPEAL from a judgment of the Superior Court of Lassen County. George H. Thompson, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Pardee & Pardee, A. E. Bolton and Arthur W. Bolton for Appellant.

N. J. Barry for Respondent.

BURNETT, J.—The appeal is from a judgment based upon the verdict of a jury for five thousand dollars against the defendant, in an action for damages for the death of plaintiff's minor son, Joseph Solomon, aged nine, who, with twenty-five or thirty other boys, was playing with a playground apparatus in the school yard of the Westwood public school in the county of Lassen. The apparatus broke, a portion thereof striking him and causing his death. This apparatus was a swing constructed as follows: A white fir tree about twelve inches in diameter standing in the school yard was sawed off about twelve or fourteen feet from the ground. An iron pin or bolt was driven or placed perpendicularly in the top of the stump. On that pin a wheel was placed horizontally so that it revolved around the pin. A nut on the top of the pin prevented the wheel from coming off, and an iron washer was placed under the hub of the wheel and resting on the top of the stump of the tree. The evidence does not show the diameter of the wheel but it was described as being the front wheel of a dump wagon and weighing from eighty to one hundred and twenty pounds. Six ropes were attached to the rim of the wheel and they hung down to a point near the ground with a loop at the lower end.

The school children played therewith by hanging on to the ropes or putting a foot in the loop at the end thereof and swinging themselves around the tree. On October 31, 1916, three of the ropes were cut off. The use of the swing continued and it remained in that condition until the day of the accident, September 27, 1917.

That morning three boards, each twelve or fourteen feet long, ten or twelve inches wide, and one and a half inches thick, were placed in the loops of the three remaining ropes, so as to form a triangle from ten to twelve feet on each side and were lashed together where they joined. These boards were teeter-boards taken from another apparatus in the school yard. The apparatus being thus changed, about twenty-five or thirty boys got on to the boards, some standing

some sitting, while others pushed, so that they swung around. Before school opened that same morning the stump broke about five feet from the top. In falling the wheel struck Joseph Solomon on the head, causing his death as before stated. It is alleged in the complaint that "said Joseph Solomon was standing near said contrivance or appliance" at the time of the accident, but the evidence shows that he was upon one of the boards riding around with the other children.

It is not disputed that said swing was constructed and furnished by said defendant to be used as a plaything by the children attending said school. The liability of defendant for the accident is claimed by plaintiff to be based upon the theory "that said contrivance or appliance was very attractive to children, but that the same by reason of the unsoundness of said stump and the weight of said wheel was naturally and inherently unsafe and dangerous, and was constructed in a careless and negligent manner, and in its condition was unsafe and dangerous for the children using the same, or for children coming in close proximity to said contrivance or appliance while the same was being used by other children." In its answer appellant denied that said contrivance was constructed in a careless and negligent manner, "or that its condition at the time alleged in plaintiff's complaint or at any other time or at all was unsafe or dangerous to the children using the same or for children coming in close proximity to said contrivance or appliance where the same was being used by other children or at all." It is also claimed in the answer that said contrivance was so constructed as to be a safe and proper thing for use as a plaything by said children, and that had said appliance been used in the manner and for the purpose for which it was constructed no injury could have resulted therefrom. It was further alleged in the answer that pupils attending said school, without the knowledge or consent of the defendant, caused a triangle to be made around said tree as hereinbefore described and that the same was caused to revolve at a high rate of speed and "a great tension placed thereon caused the wheel to give way and be disconnected from the said tree and in so doing the said Solomon as alleged and set forth in said complaint was struck and injured."

It is also set out that said appliance was manufactured and placed upon said playground by the said Red River Lumber Company at the instance and request of the board of trustees of said school district, and that defendant at no time alleged in plaintiff's complaint nor at any other time had any direct control or management of said appliance or of said pupils attending said school "or the method or manner in which said appliance could be used or was used than any other citizen in the said town of Westwood."

[1] No doubt exists that the complaint states a cause of action upon the theory that defendant did not exercise ordinary care in constructing said contrivance. This conclusion follows from the application of familiar principles of the law of negligence, but respondent contended in the trial, and the court seems to have agreed with him, that there was involved also the doctrine of what is known as the turntable cases. Respondent, indeed, states in his brief: "The plaintiff's theory of this case is: (1) That the apparatus was attractive to children, and not only was it attractive but that the children of the Westwood School were invited to play upon and about it, and that it came under the rule of the turntable cases." We are satisfied, however, that the effort to apply the doctrine of those cases to the situation herein could result only in uncertainty and confusion and was likely to produce prejudicial error. In those cases is involved a machine or contrivance that is both *dangerous* and *attractive*. It can be said, also, that a swing of the kind used herein may be both dangerous and attractive. Thus far the analogy may be complete, but the vital element in the turntable cases which makes the owner or the one maintaining the dangerous and attractive mechanism liable for injury to another is the failure to use proper care to *prevent* the injured person from using said contrivance. Herein no such negligence could, of course, be imputed, because the swing was constructed for the use of the children. In one case the contrivance is used by different persons and for an entirely different purpose from what was contemplated, while in the other, it was constructed for the use of the injured person and for the very purpose for which he was using it, that is, as a plaything. In the turntable cases the machine is required to be secured so that it cannot be used as a plaything, while herein it is

required to be left unsecured so that it can be so used. The element of allurement, also, has no such significance herein as in the other cases. That quality therein is considered as equivalent to an invitation to children to ''meddle with such machinery'' or to go about or upon it and attempt to use it for their own pleasure, so that it cannot be said that, in so doing, they are trespassers. Herein, however, the fact that the swing was made attractive has no relation to the question of negligence. The element of trespassing is not involved and it was entirely proper for the defendant to make the swing as attractive as possible to promote the purpose had in view.

The dangerous character of the machine in those cases referred to in the decisions is also an inherent and uncommon feature peculiar to the particular instrumentality which is known to the owner and with which children are not supposed to be familiar, and is independent of any fault in its construction. It is true that some hazard attends the operation and use of such a swing as the one in question, but it is not the novel and hidden danger that is regarded as so important in the turntable cases.

That the essential principle of those cases is foreign to any consideration herein we think is made plain by the decisions of the appellate courts of this state.

In the leading case of *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 [25 Am. St. Rep. 186, 27 Pac. 666], the basis for the holding is indicated in this quotation: ''And it has been held in numerous cases to be an act of negligence to leave *unguarded* and *exposed* to the observation of little children *dangerous* and *attractive machinery* which they would naturally be tempted to go about or upon, and against the danger of which their immature judgment opposes no warning or defense.''

In *Peters* v. *Bowman,* 115 Cal. 345 [56 Am. St. Rep. 106, 47 Pac. 113, 598], the principle is declared to be limited to a particular class of cases and resting upon the ground that the immature judgment of a young child could not well determine or provide against the danger of meddling with such machinery. Furthermore, the court said: ''And the cases to which the rule has been applied, so far as our attention has been called to them, are nearly all cases where the owner of land had erected on it *dangerous machinery,*

the consequences of meddling with which are not supposed to be comprehended by infant minds.'' In the opinion by the learned chief justice denying the petition for rehearing the limitations of the doctrine are clearly set forth and it was declared: ''As to common dangers existing in the order of nature, it is the duty of parents to guard and warn their children, and failing to do so, they should not expect to hold others responsible for their own want of care. But, with respect to dangers specially created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe, the rule is, as it ought to be, different, and such is the rule of the turntable cases, of the lumber-pile cases, and others of a similar character.''

In *George* v. *Los Angeles Ry. Co.*, 126 Cal. 357 [77 Am. St. Rep. 184, 46 L. R. A. 829, 58 Pac. 819], it was held that trailer cars standing upon a track when not in use and secured in place by ordinary brakes are not ''dangerous machines'' within the meaning of the rule applied in certain turntable cases. Therein the cars were secured, and that circumstance distinguishes the case from *Cahill* v. *E. B. & A. L. Stone & Co.*, 153 Cal. 571 [19 L. R. A. (N. S.) 1094, 96 Pac. 84], wherein the car was left entirely unfastened. The unfastened car was a trap for children, but when fastened with a brake in the ordinary manner, it would be a common and familiar appliance and would put the child upon guard against the danger incident to its operation.

In *Loftus* v. *Dehail*, 133 Cal. 217 [65 Pac. 380], it is said: ''To what was there said [referring to *Peters* v. *Bowman, supra*], it may be added that the turntable might well be considered peculiarly attractive to children—a movable machine in the nature of a merry-go-round—but at the same time the children being ignorant of the dangers and injury to which they were exposed in revolving it, the unprotected machine itself became a trap for them and these cases may therefore be properly classed with those which hold the owner responsible for that reason.'' It is furthermore said that it is not true that anything which may be found to be attractive as a playground or plaything for children ''casts a responsibility of guard and care upon the owner of that thing.''

In *Giannini* v. *Campodonico,* 176 Cal. 548 [169 Pac. 80], the foregoing earlier cases are reviewed and it was held that the doctrine of the turntable cases did not apply, since a stable is not an "attractive nuisance" within the meaning of the decisions.

In *Polk* v. *Laurel Hill Cemetery Assn.,* 37 Cal. App. 624 [174 Pac. 414], the elements involved in the turntable cases are clearly pointed out, and it is held that "a cemetery association maintaining an unguarded reservoir alongside a driveway near an entrance to the cemetery is not liable under the rule of the turntable cases, for the drowning of a child of the age of eight years."

In *Faylor* v. *Great Eastern Quicksilver Mining Co.,* 45 Cal. App. 194 [187 Pac. 101], the deceased child fell to his death into a stope driven through the floor of the tunnel on mining property into which the child had wandered while playing with the cars in which the ore was moved and "it was held to be a question for the determination of the jury whether the mining company was negligent in failing to close the mouth of the tunnel." Therein the conditions that exist in the turntable cases are pointed out, but emphasis is laid upon the fact that the actionable negligence grows out of the failure to adopt suitable precautions to prevent the use of the contrivance by children. In passing we may state that in the Faylor opinion the court was in error in declaring that in *Polk* v. *Laurel Hill Cemetery Assn., supra,* "the rule of turntable cases was applied to a reservoir of water in which a child was drowned, apparently because the reservoir was so concealed as to be dangerous to persons passing it." The fact is that in the Polk case it was clearly held that said doctrine did not apply for reasons stated therein.

In considering the philosophy of the rule in those cases it is said in some of the decisions that the owner or the one in charge of the dangerous contrivance ought reasonably to anticipate that an injury to children would occur, if the machine is not properly guarded, and therefore he must be held to have anticipated it and to be guilty of negligence if it does cause injury. The reason for the rule, and therefore the rule itself, must fail herein because the swing was not naturally dangerous to children but a safe and common apparatus with which children habitually play without in-

jury. Hence, injury from its use in the ordinary way would not be likely to occur, and no one is under obligation to anticipate what is unlikely to happen. In this connection it will not be disputed that one who furnishes or maintains such an instrumentality is bound to anticipate and provide against only the natural and probable consequences that may result therefrom.

The question then arises whether the erroneous view of the trial judge as to the application of said doctrine resulted in prejudice to appellant. This consideration requires an examination of some of the instructions given to the jury.

[2] Defendant requested the following instruction: "If you believe from the evidence that the appliance was made and manufactured by the Red River Lumber Company and the Red River Lumber Company knew the purpose for which it was to be used, and it was manufactured sufficiently strong for the purpose for which it was intended to be used, and while used for that purpose no injury or loss occurred, I charge you that you cannot find damage against the defendant." The court gave the instruction but added the following modification, "*unless you find such appliance constituted an attraction calculated by its nature to attract or lure children of immature mind to meddle with it or otherwise interfere with or make use of it, and as a fact did so to their injury by reason of the inherent danger attendant to the setting of such appliance in motion, as otherwise instructed you herein.*"

It may be doubted whether the jury fully understood the instruction as given. Indeed, it seems to us quite confusing and misleading. It was likely to be construed as meaning that although the jury believed that the defendant constructed the swing sufficiently strong for the purpose for which it was designed, yet if they believed that it constituted an attractive and alluring contrivance and there was danger connected with its operation, then defendant would be liable for the injury. The truth is that, if properly constructed for the purpose for which it was intended, culpability does not attach to the defendant by reason of the fact that it was made attractive and alluring, or that *inherent* danger may have attended its operation. It was proper, as we have seen, for the defendant to make the swing attractive and alluring, and any *inherent* danger,

that is, danger arising from the nature of the contrivance, is a common and familiar danger not imputing negligence to the defendant. We do not think that the instruction as proposed by defendant and thus modified should have been given.

Again, defendant requested this instruction: "If you believe from the evidence that after the appliance had been made and set up by the defendant's agent or employees, its character and use was materially changed without any knowledge of or consent of the defendant, and after its character and use was changed the accident occurred, I charge you that you cannot find against the defendant." The court gave it, but added the following: "Provided you find such appliance as so first constructed was, and continued to be, not inherently dangerous, or was not, or did not continue to be an appliance attractive to children of immature mind and calculated to attract them to meddle with, interfere with it, or otherwise set it in motion to their injury by reason of the inherent danger attendant to the setting of such contrivance in motion." As proposed, it may be admitted, that the statement was somewhat inaccurate, but the natural effect of the instruction as given would result in this impression that, although the jury believed that the accident was directly and proximately due to the act of third persons who changed the character and use of the swing without the knowledge or consent of the defendant, yet they must find for the plaintiff if they believed it was originally an attractive and alluring contrivance inherently dangerous. In other words, the probabilities are that the jury would understand from the instruction that, although they might be satisfied that the injury was caused by the intervention of a separate and independent agency, yet they were at liberty to apply the rule of the turntable cases, and so might find for plaintiff. The trial court probably did not intend this result but the peculiar language used makes the instruction susceptible to such criticism.

A similar addition was made to this proposed instruction: "If you find from the evidence that after the appliance was set up and had been used in accordance with the purpose for which it was constructed, and it was so changed that an additional burden and weight was put thereon and that the additional burden and weight caused the breakage, and you

further find from the evidence that the change was made without any knowledge or consent of the defendant, then I charge you that your verdict must be for the defendant." There was evidence to support the theory therein contained and we can see no legal objection to the instruction as proposed, and we think it ought to have been given without adding a recital of the inappropriate and inapplicable doctrine.

[3] Another contention of appellant is that there is no evidence that the swing was negligently constructed. In this connection we recall that respondent relied only upon the claim that the tree was unsound and therefore unsafe, and that appellant was charged with knowledge of its condition. The burden of proof was upon plaintiff to support this claim and, of course, the defect must have related to the time when the swing was constructed. Defendant would not be liable in consequence of any unsoundness that may have developed after the swing had been used, since it was under the care and control of the school authorities. But plaintiff offered no evidence as to the time when it was constructed or as to the condition of the tree when the swing was placed upon it. His witnesses apparently never saw the tree before the accident or ever examined it before it broke. For example, Paul Tessendorff testified: "I recall the occasion of the little Solomon boy getting killed. I was present about ten minutes afterward. I saw the appliance on which the children were playing at the time. The appliance was in the first place a rotten tree. . . . I examined the stump when I went there about five minutes after the child was hurt. . . . It was not rotten, but it was old and kind of—it wasn't like a young tree; a young tree is full of life, but this tree was dried out like. . . . At the time I saw it, I am not able to say whether or not the tree had been dead for some time. I can't say exactly how long it had been dead. It did not have the appearance of having recently died. It had the appearance as if that wheel had been on the tree a long time and it had in that time decayed or dried out." There is evidence that the swing had been in use since October of the preceding year, but how much longer does not appear. Evidence that the tree had dried out a year or longer after the swing had been constructed would not be

sufficient to support the contention that it was defective at the time the plaything was installed.

In *Ferraris* v. *Kyle*, 19 Nev. 435 [14 Pac. 529], it was said: "The district court correctly considered that a knowledge of the condition of a brush fence at the time of trial was not a fact from which the jury could infer its condition twenty-nine months before."

[4] Nor could such evidence be regarded as sufficient to disclose the negligence of defendant upon the theory that there was a continuing obligation upon its part to keep the swing in a safe condition. This duty devolved upon the school district, its officers and teachers under the general mandate to maintain, supervise, and repair public school buildings and premises. After the swing was put in place through the order of the school board it was at all times under its care and control. The duty belonged to the school authorities to keep the apparatus in repair and to supervise the play and conduct of the children on the school premises. They are charged with knowledge of what takes place thereon, and if through use or the flight of time the stump or any other portion of the contrivance deteriorated and became unsafe and thereby the accident happened, defendant could not be held responsible.

In *Bruenn* v. *North Yakima School Dist.*, 101 Wash. 374 [172 Pac. 569], some of the boys removed a teeter-board and placed it across a swing, using it as a combined teeter-swing. When the school bell rang the boys jumped off the board, one end struck the plaintiff's ankle and severely injured him. The court held that the school district and the teachers were negligent in permitting the boys to take the board and place it upon the swing. The court said: "If the teacher knew it, it was negligence to permit it; if she did not know it, it was negligence not to have observed it."

In *Kelley* v. *School Dist. No. 71*, 102 Wash. 343 [173 Pac. 333], a child was injured by the breaking of a swing which was suspended from an iron ring which passed through the eye of a staple. When the ring wore sufficiently thin, it broke. It was held that the negligence of the school district in failing to inspect the apparatus and keep it in repair was the proximate cause of the injury.

Other cases along the same line cited by appellant are the following: *Redfield* v. *School Dist. No. 3*, 48 Wash. 85 [92

Pac. 770]; *Howard* v. *Tacoma School Dist. No. 10*, 88 Wash. 167 [Ann. Cas. 1917D, 792, 152 Pac. 1004]; *McCarton* v. *New York*, 149 App. Div. 516 [133 N. Y. Supp. 939]; *Ching* v. *Surrey County Council*, 102 L. T. R. (N. S.) (Eng.) 414; *Morris* v. *Carnarvon County Council*, 102 L. T. R. (N. S.) (Eng.) 524, 1 K. B. 840.

[5] Another serious question is presented by the contention of appellant that the injury was proximately caused by the intervening act of a third party. The principle of law involved in this claim is, of course, well settled; the only difficulty is in its application to the peculiar facts of the case. It is the position of appellant that the proximate cause of the injury was the intervening act of the third party who attached the boards to the swing and thereby broke the line of causation from any negligence of defendant in the original installation of the contrivance. Among the cases cited is *Schwartz* v. *California G. & E. Corp.*, 163 Cal. 398 [125 Pac. 1044]. Therein one of defendant's servants dropped on the land of plaintiff an insulator from the defendant's power line. The suit was brought for injury to plaintiff's horse caused by his stepping on the insulator so dropped. The defendant requested the court to instruct the jury that the defendant was not liable unless the evidence showed "that the employees of defendant negligently placed said insulator on the premises where it is claimed said horse was injured, and *at the point where the evidence shows said horse was in fact injured.* The instruction was modified so as to read: "That the employees of defendant negligently placed or permitted said insulator to remain on the premises where it is claimed said horse was injured, and at *a point where the evidence shows some injury might result.*" The supreme court held this to be prejudicial error, saying: "It seems plain that if appellants carelessly dropped the insulator upon the premises and did not remove it they would be guilty of negligence, but after it was dropped if somebody else picked it up and moved it to this spot where the damage was done, it was the negligence of the latter that proximately caused the injury. It would not be a case of correlative and concurring causes, but of proximate and remote agencies independent of each other."

Other interesting and instructive cases cited by appellant are: *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576 [18 L. R. A. (N. S.) 905, 113 S. W. 647] ; *Carter* v. *Towne,* 103 Mass. 5Ò7 ; *Cole* v. *German Sav. & Loan Soc.,* 124 Fed. 113 [63 L. R. A. 416, 59 C. C. A. 593] ; *Burt* v. *Advertiser Newspaper Co.,* 154 Mass. 238 [13 L. R. A. 97, 28 N. E. 1] ; *Claypool* v. *Wigmore,* 34 Ind. App. 35 [71 N. E. 509] ; *Dolan* v. *Callender et al.,* 26 R. I. 198 [58 Atl. 655] ; *Marsh* v. *Giles,* 211 Pa. St. 17 [60 Atl. 315] ; *Saverio-Cella* v. *Brooklyn Union Elevated R. R. Co.,* 55 App. Div. 98 [66 N. Y. Supp. 1021] ; *Fishburn* v. *Burlington etc. Ry. Co.* (Iowa), 98 N. W. 380.

Respondent also cites a line of authorities which he claims upholds him in the contention that the case is not one of intervening independent agency, among which we may specifically notice only the two California decisions—*Pastene* v. *Adams,* 49 Cal. 87, and *Merrill* v. *Los Angeles etc. Co.,* 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534]. It is apparent in these cases that the original negligence was operative until the accident and was a contributing cause thereto. Its effect was not broken or disturbed by the intervention of the other cause but was simply accelerated or augmented thereby. In the Pastene case the lumber remained in the same negligent condition in which it was piled by the defendant and the one who drove against it was guilty of a concurring and contributing act of negligence. If, after the defendant had negligently piled the lumber, someone had changed it and thereby made it dangerous, and the injury had thereafter occurred, would not the causal connection with the original negligence have been destroyed? (*Fowles* v. *Briggs,* 116 Mich. 425 [72 Am. St. Rep. 537, 40 L. R. A. 528, 74 N. W. 1046].)

If in the Merrill case the pipe had been defectively constructed but the leak had been caused by the act of a third party in tampering with it, the gas company would hardly be liable for the injury unless it had an opportunity to repair it. (*Luehrmann* v. *Laclede Gas Light Co.,* 127 Mo. App. 213 [104 S. W. 1128].)

Herein we must remember that when the swing was placed in position there were six ropes attached to it, that some time thereafter three of these were removed and for a long time with the remaining three ropes the children

swung around from day to day without any accident. Then came the vital change in the structure produced without any participation on the part of appellant and the injury immediately followed.

It seems clear that in consequence of this intervening act appellant was relieved of liability for any negligence in the construction of the swing, unless it can be said that the danger was not increased by the addition of the boards and the change in the manner of using the swing, or that this deviation from the original method should have been reasonably anticipated by appellant.

As to the increased burden and strain thereby imposed upon the stump of the tree there can hardly be any question—not only was it subjected to a greater weight than when used as before, but by reason of the weight's immobility and unequal distribution it greatly added to the tension. It cannot be said that the change was unimportant or that the break would have occurred if the children had used the swing as it had been used for some time.

[6] As to the remaining consideration the rule admittedly is that appellant was required to foresee and make preparation for the natural and probable consequences of the installation of the swing; in other words, what a reasonable person would be supposed to anticipate in reference to its use. Is it a proper application of this principle to hold that notwithstanding the swing was constructed, as we have seen, with ropes, appellant should have foreseen that planks would be attached thereto and the additional burden thereby imposed? Manifestly, there is no certain test for the determination of this question and it is doubtful whether much aid is furnished by the adjudicated cases. Appellant, however, claims that many analogous cases hold that a party cannot be held to anticipate such a contingency. Among these, in the Marsh case, *supra,* the defendant left a stone three feet long, six inches wide, and three inches thick leaning against an electric pole in a street. Two boys attempted to ignite the light on the top by jarring the pole in pulling the top of the stone a few inches back and letting it fall against the pole. In doing so one of the boys injured his finger. It was held that the injury "was the immediate consequence not of the position of the stone as placed by the defendants, but of the independent, inter-

vening act of the plaintiff's companion in making a use of the stone *not reasonably to have been foreseen."* The court further declared that "plaintiff's injury could not have been *contemplated* as a result of the defendant's act in placing the stone on the footway."

In the Saverio-Cella case, *supra,* defendant left a windlass standing in the street with the drum and cogs tied with a rope so that they could not be revolved. Boys cut the rope and placed another around the drum and by pulling it caused the drum and cogs to revolve, thereby injuring another child who had climbed on the windlass and had his foot caught in the cogs. It was held that the defendant was not negligent, since it left the windlass safe and that it could not be reasonably anticipated that the rope would be cut and another placed on the drum, it being said in the opinion: "I think that a man of reasonable prudence and care, under the circumstances of this case, might not reasonably have expected that the rope might be cut, and the machine might thereupon be completed by a new drum rope, and that thereupon the drum rope might be manned and tugged upon by a gang of lads so that the wheels might be put in motion, and that thereupon at such time a lad playing in the street might so clamber upon the machine as to come in contact with the revolving cogs; and so the law frees the defendant."

But if it should be thought that herein defendant should have anticipated that the natural curiosity and venturesome disposition of the immature mind might prompt the children to so change the apparatus, it could hardly be supposed and foreseen that any person of mature judgment would so recklessly convert it into a dangerous instrumentality. Herein it may be said that one of the children testified that the boards were put upon the swing by the teacher. This answer was stricken out on the ground that the answer had alleged that this was done by the children. Thereupon appellant asked permission to amend the answer, by substituting "some person" for "pupils attending said public school," stating that it had not discovered until two days before that the change was made by the teacher instead of by the boys. The court denied the motion. The general rule is that an amendment of pleadings should be allowed at any stage of the trial when it is necessary for the purpose of justice.

(*Guidery* v. *Green,* 95 Cal. 630 [30 Pac. 786].)   As stated in the Guidery case, ''If, by reason of such amendments the court was satisfied that the plaintiff was taken by surprise and required further time in which to make suitable preparations for meeting such defense, it could have continued the case or postponed the further hearing until the plaintiff should have reasonable time to make such preparation, and at the same time would impose upon the defendant such terms as would compensate the plaintiff for the expense and delay caused thereby.''

It is seldom that a court is justified in denying a party the privilege of amending his pleading so that he may properly present his case, and obviate an objection that the fact sought to be proven is not embraced within the issues made by the pleadings. (*Marr* v. *Rhodes,* 131 Cal. 267 [63 Pac. 364].)

We can perceive no good reason why the amendment should not have been allowed so as to permit the real situation to be developed by the evidence.

Under well-established principles we are satisfied the judgment must be reversed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.