[S. F. No. 14399. In Bank.—January 30, 1932.]

CHARLES DAHMS, Respondent, v. GENERAL ELEVA-
TOR COMPANY (a Corporation), Appellant.

John Ralph Wilson and Carl E. Day for Appellant.

Hadsell, Sweet & Ingalls and Cleveland R. Wright for Respondent.

THE COURT.—Plaintiff brings this action for personal injuries received by him on April 23, 1927, when the elevator he was employed to operate in the Wilson Building in San Francisco fell by reason of a broken hoisting shaft. Plaintiff's employer at that time was the Wilson Estate Company, the owner of the building, for whom plaintiff had been working in the capacity of elevator operator for several years before the date of the accident. Plaintiff names as sole defendant the General Elevator Company, which company had a contract with the Wilson Estate Company, by the terms of which the General Elevator Company agreed to keep the elevators in the Wilson Building in repair and to do all the work necessary for the safety and maintenance of the elevators, and to make periodic inspections of the elevator equipment and machinery. This contract had been in existence for many years prior to the accident in which plaintiff was injured, and under it the General Elevator Company had made weekly inspections of the elevator equipment, and on many occasions, as the need therefor was ascertained from such inspections, had repaired the elevator equipment in the building, including the machinery controlling the elevator operated by plaintiff.

The elevator involved in the accident in which plaintiff was injured is of the type known as an electric basement drum elevator. It is raised and lowered by means of two steel cables attached to the top of the elevator car. These cables ascend to the penthouse at the top of the elevator shaft where they pass over a cast-iron wheel called a hoisting sheave, which has two grooves in its circumference for the cables. This sheave is held in place by a shaft on which this sheave is tightly pressed, so that the shaft and sheave turn

together, the cables turning the sheave, and the sheave turning the shaft. The ends of the shaft rest in bearing boxes. After passing over the sheave the hoisting cables run to the basement and are attached to a drum located there. The immediate cause of the accident in which plaintiff was injured was that the hoisting shaft to which the sheave was attached broke, so that the hoisting cables had no support.

At the time of the accident the safety device with which the elevator was equipped, and which it was defendant's duty to keep in repair, failed to operate. This safety device was controlled by a governor, adjusted to the normal speed of the car. In the event the elevator starts falling the governor causes tension to be exerted on a device known as the releasing carrier pulling out a metal button which controls a stopping device. This button, if properly adjusted, should be pulled out with not more than a 300-pound pressure. After the accident it was discovered that the metal button had not pulled out and that it would have taken a pull of 2,390 pounds to pull out the button. The evidence is uncontradicted that once the button is adjusted it cannot by itself work in deeper, but will remain as adjusted.

The complaint alleges the existence of the contract to repair and inspect, and further alleges that defendant so negligently repaired the elevator that it became unfit and unsafe for service, and that as a result of such negligent repair the elevator fell and caused the injuries to plaintiff; that defendant was under a duty to inspect the elevator weekly and to report all defects to the Wilson Estate Company; that defendant had made an inspection on April 22, 1927, the day before the accident, and had reported the elevator in good working order; that on said date, and for about three weeks prior thereto, the elevator was in a defective and unsafe condition; that the inspections by defendant were so negligently and carelessly made that the unsafe condition of the elevator was not discovered or reported.

The evidence interpreted most favorably for plaintiff, in whose favor the jury brought in a verdict, shows that defendant had exclusive charge of the repair and inspection of the elevator; that it had been in such exclusive charge for many years; that it knew that plaintiff was an employee

of the Wilson Estate Company and as such operated the elevator in question; that defendant did not make or install the elevator but inspected and serviced it for a monthly charge and made repairs as needed, for which additional charges were made; that such inspections were made weekly by an employee of defendant, one Ballas. It is admitted that in May, 1926, the hoisting shaft broke and that defendant installed a new shaft; that in December, 1926, defendant installed a new governor cable on the safety device, but the employee who installed the same could not state that at the time of the installation he tested the safety device although the new rope was thicker than the old one. It is also admitted that about two weeks before the accident an employee of defendant, Van Ramm by name, discovered that the hoisting sheave was cracked in the hub; that defendant's employees immediately caused the sheave and shaft to be removed; that the cast-iron sheave was repaired by welding; that defendant intended that the welding of the sheave should only be temporary, for defendant immediately ordered a new sheave; that the shaft remained in the sheave during the welding process; that defendant's shop foreman, Magee, was suspicious of the shaft because of the cracked sheave; that a cracked sheave might indicate that something was wrong with the shaft; that Magee tried to drive the shaft out with a 25-pound sledge in order to examine it but could not do so; that this made him suspicious and he tested the shaft by tapping with a hammer; that according to this test the shaft appeared to be sound; that the welded sheave and shaft were then installed and were used for twelve days when the accident occurred by reason of the breaking of the shaft approximately under the spot where the sheave had been welded. There was some evidence to the effect that after the accident the break in the shaft appeared to be an old fracture. It further appears that it was the defendant's custom to examine the safety device about once every six months; that the method used for testing was to pull the governor cable up; that this method was not the proper method of testing the safety device; that the proper method was to pull down on the back line. As already stated, when defendant installed the new governor cable in December, 1926, it did not test the safety device. The inspector at first was unable to say

whether he had tested the safety device between December, 1926, and the date of the accident, but later testified that such a test had been made some time before the accident; that the method then used was the method considered by plaintiff's witnesses to be improper. Defendant's employee Ballas inspected the elevator the day before the accident and issued an "O. K." slip indicating the elevator was in proper running condition. There was some evidence that on this occasion the inspector did not so much as even look at the overhead workings of the elevator, and there is evidence which would permit the jury to infer that an examination then would have disclosed the defective condition of the shaft. There was also evidence that would permit the jury to infer that testing a shaft with a hammer with the sheave on it would not disclose defects in the shaft; that the better method would have been to press the shaft out of the sheave and examine it.

From this *résumé* of the evidence it is apparent that there is sufficient evidence in the record to sustain a verdict against defendant, based on its negligence in repairing the sheave, or in negligently setting or failing to discover the defective condition of the safety device, if in fact defendant owed any duty of care to plaintiff. Appellant strenuously contends that it owed no duty of care to plaintiff, with whom it had no contractual relation, and that its liability, if any exists, is to the Wilson Estate Company. ■ It is elementary, of course, that no tortious liability can be imposed on a defendant even though it was negligent, unless defendant owed a duty of care to plaintiff. (*Buckley* v. *Gray*, 110 Cal. 339 [52 Am. St. Rep. 88, 31 L. R. A. 862, 42 Pac. 900].) We turn to a discussion of that question.

It is first to be kept in mind that the duties of defendant must be measured by the same rules that apply to manufacturers and vendors. In other words, although defendant did not manufacture the elevator machinery, as the repairer thereof, it is to be held to the same duties and liabilities that the manufacturer is held to. This would seem to be reasonable and just and amply supported by authority. In *Kahner* v. *Otis Elevator Co.*, 96 App. Div. 169 [89 N. Y. Supp. 185] (affirmed 183 N. Y. 512 [76 N. E. 1097]), the Supreme Court of New York had under consideration a case on all-fours with the instant case. The

defendant therein had been employed to repair an elevator. The court held (p. 186): "Such being the employment of the defendant, and the obligation it assumed, we think it stands in the same relation a manufacturer would occupy who furnished the elevator . . . and that the same liability rests upon this defendant as would pertain to the manufacturer of such a machine." See, also, *Dallas Hotel Co.* v. *Fox,* (Tex. Civ. App.) 196 S. W. 647, involving the same point. It is a general rule that an independent contractor such as a manufacturer or vendor of an article is not liable for injuries sustained by reason of defects in articles unless there is a contractual relationship between him and the one injured. (*Fidelity etc. Co.* v. *Paraffine Paint Co.*, 188 Cal. 184 [204 Pac. 1076]; *Catlin* v. *Union Oil Co.*, 31 Cal. App. 597 [161 Pac. 29]; 19 Cal. Jur. 611.) The leading case so holding is *Winterbottom* v. *Wright*, (1842) 152 Eng. Rep., 402, where it was held that one under contract to furnish a coach was not liable to the driver of the coach for defective construction, after the coach had been furnished and accepted. To this general rule, as above stated, there are certain exceptions, recognized generally by nearly all jurisdictions. However, the various jurisdictions are in hopeless conflict as to the applicability of any one exception to particular factual situations. (See note, 41 A. L. R. 8.) One exception to the general rule is that the manufacturer or vendor is liable to third persons when at the time of the injury he retains some control over the article or appliance causing the injury. It would appear that the instant case might well fall within this exception. The defendant had exclusive charge of the repair and inspection of the elevator prior to and at the time of the accident. However, we are not inclined to hold that the present case falls solely within this exception to the general rule. ■ We are of the opinion that it falls properly within another well-settled exception. There are numerous cases from nearly every jurisdiction which hold that an action sounding in negligence may be maintained by a stranger to a contract for the execution of a specific piece of work or the sale of a manufactured article, if the product of the stipulated work or the article sold was abnormally dangerous or noxious. (*Fidelity etc. Co.* v. *Paraffine Paint Co.*, *supra; Catlin* v. *Union Oil Co.*, *supra.*) In most of the early cases in which

the right of action under this exception has been discussed the courts have proceeded upon the theory that the duty arising from dangerous quality exists only as respects things. that are, in the stricter sense of the term ''dangerous in themselves'', such as poisons, explosives, etc. The California cases have heretofore shown an inclination to so limit the rule, although not definitely so holding. (See *Means* v. *Southern Calif. Ry. Co.*, 144 Cal. 473 [1 Ann. Cas. 206, 77 Pac. 1001], where it was held that sulphuric acid is not such a dangerous instrumentality that one handling it does so *at his peril; Lewis* v. *Terry Co.*, 111 Cal. 39 [52 Am. St. Rep. 146, 31 L. R. A. 220, 43 Pac. 398] ; *Solomon* v. *Red River Lumber Co.*, 56 Cal. App. 742 [206 Pac. 498] ; *Fidelity etc. Co.* v. *Paraffine Paint Co., supra; Catlin* v. *Union Oil Co., supra.*) In *McCall* v. *Pacific Mail S. S. Co.*, 123 Cal. 42 [55 Pac. 706], plaintiff was injured by virtue of a defective sling furnished by defendant, who was not the employer of plaintiff. The court denied recovery to plaintiff because negligence was not shown to exist, but clearly held that the defendant owed plaintiff a duty of due care. At page 43 it is stated: ''But the rule is too firmly settled to be open to successful. attack, that where one agrees to furnish to a contractor material or appliances which he is to use in the performance of his task the principal is liable to the servants and agents of the contractor for injuries which may result to them from his negligence or inadequate performance of his contract in this regard. The liability is not based upon the relationship of employer and employee, but it is considered by some courts that the contract is made with the contractor for the benefit of his employees, who have, therefore, their right to a recovery for any breach of it which results in their injury.. By other courts the contractor is considered to be the dependent agent of his employer in these respects, and the doctrine of *respondeat superior* is brought into application. By still others it is placed upon the ground of the failure of the principal to exercise the ordinary care which is due to everybody, without regard to contract, under the principles announced in sections 1708, 1714 and 3281 of the Civil Code, and this seems to be the true reason for the rule. But, however that may be, the principle itself is settled beyond the possibility of successful controversy.

Mechem on Agency, section 666, thus declares the doctrine: 'If the principal was by the terms of the contract under obligations to the contractor to furnish the necessary machinery or appliances, or to supply a portion of the labor, he would be liable to the servant or agent of the contractor for an injury sustained by reason of his neglect to use due and reasonable care in selecting and supplying the proper machinery or appliances.' '' In many jurisdictions, in recent years, there has been a marked tendency to extend the exception under discussion beyond inherently dangerous articles to those articles which are reasonably certain to place life and limb in peril if negligently prepared or constructed. (*Windram Mfg. Co.* v. *Boston Blacking Co.*, 239 Mass. 123 [17 A. L. R. 669, 131 N. E. 454].) One of the early cases to first extend the doctrine beyond those articles inherently dangerous is *Devlin* v. *Smith*, 89 N. Y. 470 [42 Am. Rep. 311]. In that case it was held that an action was maintainable for the death of a workman resulting from the collapse of a high scaffold which defendant had negligently constructed for the employer of the deceased workman. At page 478 the court held: ''Any defect or negligence in its construction, which should cause it to give way, would naturally result in these men being precipitated from that great height. A stronger case where misfortune to third persons not parties to the contract would be a natural and necessary consequence of the builder's negligence, can hardly be supposed, nor is it easy to imagine a more apt illustration of a case where such negligence would be an act imminently dangerous to human life. These circumstances seem to us to bring the case fairly within the principle of *Thomas* v. *Winchester*, 6 N. Y. 397 [57 Am. Dec. 455].'' New York has squarely held that the imminently dangerous doctrine applies to one who undertakes to repair an elevator, in the case of *Kahner* v. *Otis Elevator Co.*, *supra*. In that case the factual situation was identical with the case at bar. The defendant was employed to repair an elevator, and did so negligently, resulting in injuries to plaintiff, a third person not a party to the contract. The court after first referring to the general rule as above stated, and to the ''imminently dangerous'' exception thereto, continued as follows, at page 188: ''It is not disputed by the learned counsel for the appellant that this exception

exists in the law, but it is insisted that the imminently dangerous character of the machine or appliance must be something inherent in its nature; and it is argued that, by the decisions of the courts of this state, such is the real test. As in *Loop* v. *Litchfield*, 42 N. Y. 351 [1 Am. Rep. 513], it was said that a fly-wheel which broke was not a dangerous instrument; and the language of the opinion in that case is strongly indicative of the view that the inherently dangerous character of a machine, within the comprehension of the exception referred to, relates to instruments or articles which in their very nature are calculated to do injury to mankind, and are generally intended to accomplish that purpose. It is not to be disputed that an elevator properly installed is not a dangerous appliance to a building. As an appurtenance to modern structures, it is becoming almost as common in use as a staircase. Therefore, if the liability of the defendant here depends upon the adoption, as exclusive, of the definition of a dangerous instrument as above given, and in other cases referred to and cited by the appellant in argument, that liability would not exist. But is such definition exclusive and controlling in this case, and is the defendant relieved from liability in consequence thereof? As we look at it, the definition is not exclusive, for the proof shows that the elevator was made dangerous by the treatment it received from the appellant's servants in the performance of its duty and obligation to make it safe for the use of those authorized to use it. To state the proposition clearly and distinctly, it is that, although a machine may not be in its nature inherently dangerous, yet, if it is made so by the neglect of a manufacturer having notice and knowledge that it is to be used by others than the purchaser, and injury results to others than the purchaser, directly traceable to that negligence, such manufacturer is liable to the person injured because of that negligence. This is undoubtedly an extension of the rule of law, but it has its support in authority." We are of the opinion that the instant case falls within the doctrine therein enunciated. It is to be noted that liability in such cases is predicated on the negligence of the manufacturer or repairer. He is in no sense an insurer. In the present case we think the evidence is sufficient to sustain a verdict based on defendant's negligence. We are of the opinion that the

jury could properly find that the accident was proximately caused by reason of the fact that the defendant negligently repaired the hoisting sheave, or negligently failed to discover that the hoisting shaft was defective, and that the elevator continued to fall by reason of defendant's negligence in setting the safety device, or in negligently failing to properly inspect the same. Defendant as a matter of law is chargeable with knowledge that in undertaking to repair an instrumentality such as an elevator, and particularly the hoisting shaft and sheave thereof, any negligence on its part would cause injury to the operator of the car. It is likewise chargeable with knowledge that if an accident should occur and the safety device did not work the car would be precipitated to the basement and the operator injured. In such a case we think that defendant was under a duty to plaintiff to use ordinary and reasonable care in the repair and inspection of the elevator, and where as here the jury finds that defendant negligently performed its duties, and such negligence proximately contributed to the injury, the liability of defendant to plaintiff is clear.

■ One other contention of appellant warrants some mention. It complains of an instruction which it refers to as a "formula" instruction, and contends that it was erroneously given for the reason that it does not contain the charge that before defendant can be held liable the jury must find that it knew or should have known of the defective condition of the elevator and safety device. Appellant relies on the rule that a formula instruction must embrace all the elements essential to a recovery and a failure so to do constitutes error. We have no quarrel with that doctrine. The instruction complained of told the jury that, "If you find from the evidence that the defendant General Elevator Company did undertake to repair the elevator in the Wilson Building and certain machinery or appliances used in connection therewith, and if you further find that any such repairs were carelessly and/or negligently made so that said elevator was in an unsafe and dangerous condition for use on the 23rd day of April, 1927, and if you further find that said unsafe and/or dangerous condition, if any, was unknown to plaintiff Charles Dahms, and if you further find that any such unsafe or dangerous condition was the proximate cause of the alleged injuries to the plaintiff

Charles Dahms, then I instruct you that your verdict must be against the General Elevator Company, a corporation, and in favor of the plaintiff, Charles Dahms." The instruction is proper in all respects and contains all the elements necessary for a recovery by plaintiff. The instruction informed the jury that they must find that defendant negligently repaired the elevator and that such negligence proximately contributed to the injury before they could find for the plaintiff. These were the only two elements necessary under the reasoning above given.

■ Appellants contend that plaintiff's counsel was guilty of prejudicial misconduct in stating to the court, in the presence of the jury, during an argument over the admissibility of evidence that plaintiff's employer was insured for injury to workmen, and indicating that the insurance carrier had an interest in the recovery. In our opinion this was not prejudicial misconduct, particularly in view of the fact that defendant first brought the question to the attention of the jury.

The other alleged errors complained of are without merit. The judgment appealed from is affirmed.

Rehearing denied.