[Civ. No. 3258. Third Appellate District.—May 26, 1927.]

## A. J. CLIFF, Appellant, v. THE CALIFORNIA SPRAY CHEMICAL CO. (a Corporation), Respondent.

[1] Negligence—Injury to Eye Caused by Chemical—Pleading—Alternative Averments—Demurrers—Judgments.—In an action for damages for injury to plaintiff's eye caused by a chemical solution purchased from one to whom the defendant manufacturing company sold it, although the trial court erred in overruling defendant's special demurrer directed against an alternative allegation in the complaint, that the person from whom plaintiff purchased the chemical acted either as agent of defendant or as a retailer, defendant was not prejudiced thereby where judgment was rendered in his favor.

[2] Id.—Insufficiency of Evidence—Trial.—In such action, the evidence was insufficient to justify the submission of the case to the jury.

[3] Id.—Denial of Request for Directed Verdict—Absence of Prejudice.—In such action, the denial of a request for a directed verdict was not prejudicial to defendant where the jury returned a verdict in his favor.

[4] Id. — Liability of Manufacturer of Chemical — Absence of Contractual Relation Between Manufacturer and Seller—Remedies—Torts.—In such action, there being no contractual relations between the manufacturer of the chemical solution and the purchaser thereof from another, to whom the manufacturer sold it, recovery for the purchaser's injuries caused thereby can be had only in tort.

[5] Id.—Injuries Caused by Dangerous Substance—Concealment.—One injured by a compound or substance purchased by him can recover only if it was imminently and inherently dangerous and such danger was concealed from him.

---

1. See 21 Cal. Jur. 41, 42.

[6] ID.—KNOWLEDGE OF DANGER—LIABILITY OF SELLER.—The seller must have had knowledge, or the circumstances connected with the preparation and marketing of the compound or substance sold must have been such as to charge him with knowledge, that it was imminently and inherently dangerous to render him liable for injuries to subsequent purchasers.

[7] ID.—SELLER'S KNOWLEDGE OF DANGER—CONCEALMENT—INSTRUCTIONS.—In an action for damages for an injury to plaintiff's eye caused by a chemical solution, purchased by him from one to whom defendant manufacturer sold it, the trial court did not err in instructing the jury that defendant could not be held liable for negligence in manufacturing and preparing the solution, unless it had knowledge or should have known, and concealed its knowledge, of a dangerous defect when it shipped the solution, or that the solution was imminently and inherently dangerous without plaintiff's knowledge.

[8] ID.—JUDGMENT UNDER ADMITTED FACTS AND LAW—ADMISSIBILITY OF EVIDENCE—APPEAL.—In such action, where the judgment, under the admitted facts and law applicable, was the only one that could be entered, whether the court erred or did not err in admitting testimony that no claims for personal injuries in the use of the solution had ever been made against the company was immaterial and cannot be held to be prejudicial.

---

(1) 4 C. J., p. 935, n. 66; 31 Cyc., p. 74, n. 44. (2) 31 Cyc., p. 898, n. 8. (3) 4 C. J., p. 1022, n. 20. (8) 4 C. J., p. 987, n. 98.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

Schottky & Soliss and Ostrander & Ostrander for Appellant.

F. W. Henderson and Wyckoff & Gardner for Respondent.

---

6. Purchase from middleman as affecting liability of manufacturer or packer of defective article for injury to person or property of ultimate consumer, notes, 17 A. L. R. 672; 39 A. L. R. 992. See, also, 19 Cal. Jur. 611, 612; 20 R. C. L. 50; 24 R. C. L. 512. Liability of seller of article not inherently or obviously dangerous, note, Ann. Cas. 1914A, 877; 13 L. R. A. (N. S.) 382; 13 A. L. R. 1176; 42 A. L. R. 1243.

PLUMMER, J.—The defendant had judgment in an action begun and prosecuted by the plaintiff to recover damages for an injury resulting to one of his eyes from the alleged negligence of the defendant. From this judgment the plaintiff appeals.

The complaint alleges that during all of the times mentioned therein the defendant was engaged in the manufacture and sale of a certain chemical solution, known as and called Ortho Lime Sulphur Solution, for use in orchards and vineyards in spraying trees and vines; that said solution, for the purpose of marketing, was placed in drums or containers of about fifty gallons capacity; that on or about the twelfth day of January, 1923, plaintiff purchased at Atwater, in the county of Merced, state of California, several barrels of said solution manufactured by the defendant from one C. J. Pregno, "who was at said time acting either as an agent for said defendant or as a dealer in said Ortho Lime Sulphur Solution"; that thereafter and on or about the twenty-seventh day of February, 1923, plaintiff, intending to use said solution for spraying purposes and without any knowledge of any danger therefrom or warning by the defendant of any danger, attempted to remove the plug from one of the containers, which was the method provided by defendant for opening the same and removing the solution therefrom, and while so doing, by reason of the negligence of defendant, the plug was suddenly thrown out of its hole by explosive force within the barrel or container, and said solution contained therein was suddenly and with great force expelled and thrown out of the container, striking plaintiff in and about the face and body, a portion thereof striking his left eye and so severely injuring the same that the sight thereof was entirely destroyed; that thereafter, on the first day of November, 1923, said eye was removed by one Brett Davis, a duly licensed physician and surgeon, etc.

The complaint further alleges that the injury was occasioned solely by the negligence of the defendant, by reason of its carelessness and negligence in the manufacture and preparation of said solution for marketing and use, and its failure to warn plaintiff of any injury in connection therewith. To this complaint the defendant interposed a general and special demurrer. [1] One of the special grounds of

demurrer was directed against the alternative pleading, relative to C. J. Pregno acting either as an agent of the defendant or as a retailer of said Ortho Lime Sulphur Solution. The demurrer upon this ground was well taken (see *Johnson* v. *King*, 50 Cal. 132; 21 Cal. Jur., p. 42, sec. 22). However, as the defendant had judgment, no prejudice has resulted from such ruling.

[2] The record shows that the defendant, a manufacturer of spray materials, sold the material in question to one C. J. Pregno, a retailer at Atwater, in Merced County; that Pregno sold it to the Atwater Fruit Exchange, a co-operative association, of which the plaintiff was a member, which, in turn, sold the same to the plaintiff; that there were no contractual relations existing between the plaintiff and the defendant. The material in question was a compound containing ten per cent lime, twenty per cent sulphur, and seventy per cent water, practically uniform in character and quality with other brands of spray material in use among orchardists. The record also shows that the material in the drum or container was correctly labeled; that it was neither explosive nor poisonous, and only slightly caustic; that it would irritate the flesh, but not violently. This is in accordance with the testimony of the chemist called by the plaintiff. This witness also testified that the compound has no more volatility than water and that it had no more tendency to expand or generate pressure, when confined, than water. The plaintiff himself had used Ortho Lime Sulphur Solution spray for some four years preceding the accident; he was accustomed to protect his hands from irritation caused by the spray by wearing a pair of gloves, usually rubber gloves, and that he wore no protection over his eyes. Before the accident occurred the container had been lying in an orchard, where it was intended to use the same, for a period of some two days; that the plaintiff bent over the drum and unscrewed the plug or cap with a wrench; that, as he was doing so, the cap blew out and the spray spouted into his face and into his left eye; that he bathed his eye in a barrel of water standing in the orchard, rubbing it with his hands; that evening he applied potato poultice; afterward it was treated by Dr. Davis, of Merced, who testified that by May 1st the injury had all healed and that there was no necessity for further treatment. Plaintiff afterward went

to San Francisco to another doctor, who gave him a thermostatic treatment to remove the scar over the center of the eyeball; this treatment is by means of heat, with electricity applied directly to the center of the eye. Following this treatment there was a sloughing off of the outer surface of the cornea; water came out of the inside of the eye and the eye was lost.

The testimony of Dr. Davis was to the effect that the loss of the eye was traceable "in some way to his condition and this treatment."

While the complaint alleges that there was an explosion within the drum or container at the time the plaintiff was attempting to remove a plug therefrom, as hereinbefore stated, it is evident from the testimony that there was no explosion and that a portion of the contents of the container was caused to spout therefrom, by reason of air pressure exerted within the container. While the testimony is to the effect that the container was being opened while in a practically level position, the circumstances of the liquid spouting from the opening would strongly lead to the conclusion that the container was on a sufficient angle to cause the liquid to fall toward that particular portion of the container and to press against the plug, and that the air pressure in the opposite portion of the upper end of the drum was sufficient to cause the liquid to spout from the container. The testimony of the chemist is direct to the point that there were no explosive substances in the drum. His testimony is that the ingredients in combination were neither explosive nor poisonous; that it would irritate some, but it was not a violent irritant; that an exposure of the drum to the sun would cause a slight expansion of the ingredients, just as the sun would cause water to expand; that a rise in temperature of fifteen degrees would cause an expansion of about one-tenth of a gallon in the fifty-gallon drum.

The testimony shows that the drums delivered to the plaintiff had a capacity of fifty-four gallons. It may be here said that three drums of that capacity were purchased by the plaintiff, two of which contained fifty gallons each and one fifty-one gallons. This testimony would justify the conclusion that there was sufficient air space left in the drums, and that the spouting of the liquid therefrom must have been caused by a slight tilting of the container.

The record shows that the labels which were placed upon the drums gave specifically and in detail the quantity, quality, and ingredients contained in each. The accuracy of the labels is unquestioned. There was also testimony to the effect that the substance had been handled for many years without anyone experiencing any injurious results. There was no testimony to support the allegation that C. J. Pregno was acting as an agent of the defendant, nor was there any testimony introduced from which the jury could conclude that the chemical contents of the drums were not correctly stated on the labels, nor was there any testimony from which the jury could conclude that the contents of the drum in question was imminently or inherently dangerous, or contained anything from which the jury could conclude that a user thereof, in the ordinary course of handling, or in applying it to the uses and purposes for which it was intended, would be exposed to any hazards, or to anything that might result injuriously to either life or limb.

[3] Upon the conclusion of the case, the testimony showing, as we have said, that there were no contractual relations between the plaintiff and the defendant, that the spray had been purchased from the co-operative association, which in turn had purchased the same from Pregno, and the testimony showing that there was nothing imminently or inherently dangerous in the contents of the drum, that the chemical contents of the drums were correctly stated upon the labels pasted thereon; that the spray had been used for a number of years without any injurious consequences by the plaintiff as well as others; that the contents of the drum were neither poisonous nor explosive; that it had no more expansive quality than water when exposed to the sun; there being no testimony that the defendant knew or had any cause to know of any dangers in the handling of the compound, or knew or had reason to know of any negligence connected with the preparation or marketing thereof, or in any manner concealed, or attempted to conceal, anything whatever that might render the use of the spray material injurious, or that there were any risks incident in the use of the spray for the purposes for which it was intended; the defendant interposed a request for a directed verdict in its favor. This was denied. We think this ruling erroneous. While the ruling of the court in this particular may not be said to be

prejudicial to the defendant, by reason of the fact that the jury returned a verdict in its favor, nevertheless it does obviate a setting forth and consideration of the alleged errors of the court in its instructions to the jury.

[4, 5] There being no contractual relations between the plaintiff and the defendant in this case, the plaintiff having bought from others to whom the defendant sold the article in question, recovery can only be had in tort, and then only when the compound or substance sold is imminently and inherently dangerous and such danger concealed by the seller. [6] The seller must have had knowledge, or the circumstances connected with the preparation and marketing of the article in question must have been such as to charge him with knowledge.

While it is argued upon this appeal that this is a question of first impression, we find upon investigation that such is not the case. In *Lewis* v. *Terry,* 111 Cal. 39 [52 Am. St. Rep. 146, 31 L. R. A. 220, 43 Pac. 398], the court states the rule in this language: "If a tradesman sells or furnishes for use any article actually unsound and dangerous, but which he believes to be safe and warrants accordingly, he is not liable for injuries resulting from its defective or unsafe condition to a person who was neither a party to the contract with him, nor one for whose benefit the contract was made," citing *Coughtry* v. *Globe Woolen Co.,* 56 N. Y. 127 [15 Am. Rep. 387], *Heizer* v. *Kingsland Mfg. Co.,* 110 Mo. 605 [33 Am. St. Rep. 482, 15 L. R. A. 821, 19 S. W. 630], *Winterbottom* v. *Wright,* 10 Mees. & W. 109, and Shearman and Redfield on Negligence, 60 et seq. To the same effect is the case of *Catlin* v. *Union Oil Co.,* 31 Cal. App. 597 [161 Pac. 29].

In 19 Cal. Jur., pages 611, 612, we find the law thus stated: "Ordinarily a manufacturer is not liable for injuries sustained by reason of defects in articles sold through others unless there is a contractual relationship between him and the one injured. . . . However, even though there is no privity of contract, recovery may be had where an accident happens through the character of a substance sold as being imminently dangerous to human life, and the one injured had no knowledge of its dangerous character. Thus recovery may be had where poisons, inflammable oils, explosives and like dangerous substances are sold in a mislabeled con-

dition, even though the misbranded substance has passed through the hands of a number of intermediate vendors.

"If a tradesman sells or furnishes for use an article actually unsound and dangerous, but which he believes to be safe and warrants accordingly, he is not liable for injuries resulting from its defective or unsafe condition to a person who was neither a party to the contract, nor one for whose benefit the contract was made. But liability attaches where one delivers an article, which he knows to be dangerous, to another person, who has no notice of its nature and qualities, and injury results to such other person through no negligence of his own."

In the note to *Windram Mfg. Co.* v. *Boston Blacking Co.,* 17 A. L. R. 674, following that case, wherein the Massachusetts supreme court holds the manufacturer not liable, the annotator words the rule as follows:

"It is well settled that as a general rule a manufacturer or seller of a defective article is not liable for injuries to the person or property of an ultimate consumer who has purchased from a middleman, unless the article was inherently dangerous to life or property, the theory being that, in the absence of contractual relations between the parties, no liability can be predicated upon the manufacturer's or seller's negligence; at least, where the wrongful act or acts are not known at the time, and the article is not immediately dangerous to third persons," or, as stated in *Catlin* v. *Union Oil Co.,* 31 Cal. App. 597 [161 Pac. 29], "where there is no privity of contract between the first wrong doer and the person suffering damage, concerning things which carry no menace or threat of probable damage to third persons, the liability of the first party will extend no further than to his immediate co-contractor."

The cases cited on page 674 of volume 17 A. L. R., are so numerous in support of the foregoing statement of the law that it is unnecessary to more than refer to the citation. An exception to this rule is stated in *Hasbrouck* v. *Armour & Co.,* 139 Wis. 357 [23 L. R. A. (N. S.) 876, 121 N. W. 157]; 21 American Negligence Reports, 530, and, also, on page 681 of volume 17 A. L. R., to wit: "The manufacturer or dealer who puts out, sells, and delivers, without notice to others of its dangerous qualities, an article which invites a certain use, and which article is not inherently dangerous,

but which, by reason of negligent construction, he knows to be imminently dangerous to life or limb, or is manifestly and apparently dangerous when used as it is intended to be used, is liable to any person who suffers an injury therefrom, which injury might have been reasonably anticipated.''

Other cases to the same effect are cited in the note to A. L. R., to which we have referred, showing cases where the liability attaches and where liability is held not to attach. In all the cases cited, where the article is not imminently, inherently, or essentially dangerous, liability is rejected. Some exceptions are mentioned, which are really extensions of the rule of liability, such are cases involving the question of the known use to which the article is to be put, and which known use will ordinarily involve the safety of person or property. This extension of the rule of liability was applied in the case of *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 386 [Ann. Cas. 1916C, 440, L. R. A. 1916F, 696, 111 N. E. 1050]. In that case an automobile was equipped with a defective wheel, and it was held that while an automobile may not be said to be imminently and inherently dangerous, yet its known use is such that the equipping of an automobile with a dangerous part, such as a defective wheel, will render it imminently and inherently dangerous to the user thereof, whoever he may be. The same rule is applied to drugs, medicines, and foods. As said in the language to which we have referred in 17 A. L. R., on page 688, the decided weight of authority is to the effect that an ultimate consumer may bring an action directed against the negligent manufacturer or packer of industrial articles of food, or of inherently dangerous beverages, with whom no contractual relations exist.

In the case at bar, there is nothing in the record by reason of which the extension of the rule to articles inherently dangerous, or dangerous by reason of their intended use, holding a manufacturer liable, could be held to apply, nor is there anything in the record on which the defendant could be held liable, under the rule upholding recovery, where there has been concealed a defect or negligent construction or preparation. The language to which we have referred in 17 A. L. R., as beginning on page 672, covers thirty-eight pages and includes every phase of the

subject, and when applied to the circumstances presented by the record here, establishes conclusively that no liability has been shown on the part of the defendant. It would serve no useful purpose to recite the law found in the notes to which we have referred, and we therefore refrain from so doing.

[7]   We may, however, state that the contention of the appellant that the court erred in instructing the jury that the defendant could not be held liable for its carelessness and negligence in the manufacture and preparation of the spray material, unless the defendant had knowledge, or should have had knowledge, of a dangerous defect when it shipped the solution, and that it concealed said knowledge from its consignee, or, second, that the spray material was a substance imminently and inherently dangerous, and that the plaintiff did not have knowledge of such dangerous character and that the defendant knew or should have known it, and concealed it from the plaintiff, is not well taken.

The rule as to concealment is clearly stated in the case of *Krahn* v. *J. L. Owens Co.*, 125 Minn. 33 [51 L. R. A. (N. S.) 650, 145 N. W. 626], where a defective board was installed over a cylinder in a threshing-machine, and an injury resulted to one who stepped thereon. The rule applied was that the board was so defective as to be dangerous to life and limb; that the defendant knew of the defect when it sold the machine, or, at least, ought to have known it; that the defect was proximately the cause of the injury; that the defect was concealed to such an extent that observation on the part of the plaintiff would not disclose it; that the part was intended for the purposes for which it was being used and that plaintiff was one of the class of persons by whom it was contemplated the article would be used.

[8]   However, as hereinbefore stated, there is no evidence in the record of any concealment. The evidence is direct and uncontradicted that the labels on the drums correctly stated the ingredients contained within, and, also, the percentage of each; that the contents of the drum were neither explosive, poisonous, nor imminently nor inherently dangerous. This being the case, no contractual relations being shown, no liability exists. Whether the court erred or did not err in admitting testimony that no claims for personal injuries in the use of the spray had ever been made against the company is wholly immaterial, as under the admitted

facts and the law applicable, the judgment in favor of the defendant is the only one that could be entered, and, therefore, none of the alleged errors of the court can be held to be prejudicial.

The judgment of the trial court is affirmed.

Thompson, J., *pro tem.*, and Finch, P. J., concurred.