[Civ. No. 6324. First Appellate District, Division Two.—August 23, 1928.]

HERMAN KOLBERG, Respondent, v. SHERWIN-WILLIAMS COMPANY (a Corporation), Appellant.

John W. Hart, Albert M. Cross and Delvy T. Walton for Appellant.

Bishop & Wellington and Head, Wellington, Jacobs & Scovel for Respondent.

NOURSE, J.—Plaintiff sued for damages for loss and injury sustained by him from the use upon his orange orchard of a product manufactured and sold by the defendant known as "Citro-mulsion" and used for the purpose of spraying orange and other citrus trees to destroy scale. Plaintiff had judgment for $6,100, from which the defendant has appealed on a bill of exceptions.

The manufactured article was sold by the agents of defendant to the plaintiff through a dealer under an agreement that the dealer would apply the spray to plaintiff's orange trees under the direction and control of defendant's agents.

The spray was applied under this arrangement and resulted in serious injury to the trees sprayed and in loss of a large portion of the crop of oranges. Plaintiff sued upon the theory that the manufactured article was inherently dangerous to citrus fruit trees; that this fact was known to the defendant; and that the plaintiff was induced to purchase it and have it applied to his trees through the false representations of defendant's agents. The cause was tried before the court sitting without a jury and the court made findings of fact in accordance with the allegations of the complaint. The burden of appellant's case on appeal is that these findings are not supported by the evidence.

It is argued that there is no evidence to support the finding that "Citro-mulsion" contained an oil or ingredient that was essentially or inherently dangerous to and destructive of, the leaves, wood and fruit of citrus trees, or the finding that defendant knew it contained any such essentially and inherently dangerous element. The point is wholly without merit, as the evidence is all one way. It is admitted that the compound contained about seventy-three per cent of heavy gravity hydro-carbon oil and about twenty-seven per cent of inert ingredients. The horticultural commissioner of Orange County testified that hydro-carbon oil "is of itself injurious to citrus groves when applied straight —I have seen lots of groves injured by being sprayed with hydrocarbon oil." Other witnesses testified from their experience that this oil was injurious to orange trees, that they had seen orange groves where it had been used lose leaves, buds, and fruit. Counsel for appellant really confess the point when they say that "It was merely a question of finding the proper dosage under different weather conditions, and the conditions of the trees which would do the work of killing the pests with the greatest degree of safety to the trees." It might as well be said that arsenic is not in itself a dangerous poison because, if taken in a specially small dose, it would not cause injury. The matter of dosage was not an issue in the case. The finding under attack was responsive to the allegations of the complaint that the defendant's agents falsely and fraudulently represented to plaintiff that the compound would destroy the pests without injury to the orange trees, or to the leaves, wood, or fruit, that it had been used on a number of other

orange groves in the vicinity without any injurious effects, and that, though it would destroy the scale, it would not injure the orange trees, or the growth, buds, or fruit thereon. These representations were found to be untrue—that, in fact, the compound had been used on a number of other orange groves and had resulted in serious damage to the trees, causing the leaves, buds and fruit to fall.

The finding that the defendant knew of the injurious qualities of the compound is supported by the evidence that their agents had been actively engaged in spraying other orange groves and that their attention had been called to the damage done within a month prior to the time these representations were made to the plaintiff. Counsel for defendant concede that the injurious qualities of the spray were well known to the defendant and that these activities in other groves were in the line of ''experiments'' for the purpose of determining how far the oil should be diluted to make it effective in destroying the scale without injury to the trees. ██ But they argue that the representations that the compound would not injure the orange trees were mere expressions of opinion and not actionable. The representations were based upon statements of what had occurred when the spray was used on other orange groves in the vicinity, ''and it is well established that a statement of what might otherwise be an opinion, if based on alleged facts, is a statement of fact and not a statement merely of an opinion.'' (*French* v. *Freeman*, 191 Cal. 579, 586 [217 Pac. 515, 517]; *Tracey* v. *Smith*, 175 Cal. 161, 165 [165 Pac. 535].) Here the representations made to plaintiff were that the spray would kill the scale and that it would not injure the trees or the fruit or the buds. These representations were supplemented by the positive statement that the spray had been used in other groves with ''good results'' and without injury. The fact is that in some of these ''experiments'' in other groves defendant's compound was used diluted as follows: Four per cent (4 gallons of citro-mulsion to 100 gallons of water); five per cent, with 20 pounds of sulphur added; six per cent; and eight per cent. The results were: With the four per cent mixture, seventy-five per cent defoliation; with the five per cent mixture, twenty-five per cent defoliation; with the six per cent mixture, eighty per cent defoliation; and with the eight per cent mixture, ninety per cent defoliation.

These facts were not disclosed to plaintiff, but, with full knowledge of the disastrous results of these experiments, the defendant's agents represented that the spray had been used with "good results" and that it would not injure the trees, the foliage or the fruit.

The defendant directed its agents to solicit persons to purchase citro-mulsion from the Chidlaw Bros. and to have the same applied by Chidlaw Bros. under the direction of defendant's agents. When the sale was made to plaintiff he signed with Chidlaw Bros. a written order for a barrel of the spray under which it was agreed that Chidlaw Bros. assumed no responsibility for any injury that might occur from the use of the spray. This contract was set up as a special defense in the answer wherein the defendant alleged that it was not a party to the contract. The trial court found this to be true. The defendant now argues that Chidlaw Bros. were agents of the defendant and that their exemption from liability inured to the benefit of defendant. At the trial the defendant took the position that Chidlaw Bros. were not its agents, but dealers purchasing its product. The liability of the defendants rests upon the sound rule that a manufacturer or seller of an article inherently dangerous to life or property is liable for injuries to the ultimate consumer who has purchased through a middleman. (17 A. L. R. 674, 683.) Here the written contract expressly exempted the middleman from liability. It did not pretend to cover the liability of the defendant which was not a party to the contract and had no knowledge of its execution. The rule in this state is clear that a third party cannot claim the benefits of a contract executed by others unless it appears from the contract itself that it was executed for his benefit (*Ferguson* v. *Marsh*, 37 Cal. App. 484, 485 [174 Pac. 678] ; *Wilson* v. *Shea*, 20 Cal. App. 788, 790 [157 Pac. 543] ).

The defendant insists that the damages awarded are excessive. The trial court allowed the plaintiff $1,900 as loss to his orange crop for the 1924 season and $4,200 as damage to the orchard. The evidence upon the $1,900 item was that the plaintiff received from 2,340 boxes of oranges picked from sprayed trees the sum of $1,981 less than the average price which he received for oranges picked from trees which had not been sprayed and which were sold at

the same time. In addition it was shown that more than 700 boxes had fallen to the ground from the sprayed trees and were a total loss. The evidence would have supported an award greater than that given by the trial court. As to the $4,200 item, the evidence was that 480 trees, covering six acres, were injured and the trial court estimated the total damage by allowing $700 an acre. Plaintiff's evidence would have justified a greater award, while that offered by the defendant showed the damage to be much less. The trial court had the duty of resolving the conflict and we see no error in its finding.

But the defendant argues that the measure of damages adopted by the trial court was on the basis of the damage per tree rather than per acre and that the damages were therefore allowed for injuries to the trees alone and not for injury to the land. In its findings of fact, the trial court found "injury and damage to his orchard and to the trees thereon in the average sum of $700.00 an acre on six acres thereof," and, in its conclusions of law, the court found "damage to six acres of his orchard in the sum of $4,200.00." It is plain that, in both instances, the trial court used the word "orchard" as covering the tract of land planted to orange trees and that the damages awarded were intended to cover the damage to the land and not that suffered by the separate trees. The judgment is within the rule of *Shearer* v. *Park Nursery Co.*, 103 Cal. 415, 420 [42 Am. St. Rep. 125, 37 Pac. 412], and *Truman* v. *Sutter etc. Co.*, 76 Cal. App. 292, 308 [244 Pac. 923].

Other points raised do not require consideration. We find no error in the record.

Judgment affirmed.

Sturtevant, J., and Strother, P. J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 14, 1928.