[L. A. No. 12725. In Bank.—July 2, 1934.]

JOHN KALASH, Respondent, v. LOS ANGELES LADDER
COMPANY, Appellant; ASSOCIATED INDEMNITY
CORPORATION (a Corporation), Intervener and Re-
spondent.

Dave F. Smith and Birney Donnell for Appellant.

Haight & Trippet, Horton & Horton, Joseph K. Horton, Guy B. Graham, Robinson, Price & MacDonald, Joseph H. Weisman, G. C. DeGarmo and W. M. Crane, as *Amici Curiae* on Behalf of Appellant.

Syril S. Tipton for Intervener and Respondent.

L. J. Styskal for Respondent.

Livingston & Livingston, O'Melveny, Tuller & Myers, Walter K. Tuller and Jackson W. Chance as *Amici Curiae* on Behalf of Respondent.

PRESTON, J.—Plaintiff, a painter by trade, acting in the course of his employment, on April 8, 1929, was standing on the next to the top rung of a forty-foot extension ladder, hanging window screens on the outside of an apartment house in Los Angeles owned by Hart Brothers Company, his

employer. While so engaged, the rung of the ladder on which he was standing collapsed, due to its defective condition, and plaintiff was thereby precipitated a distance of some thirty feet to the sidewalk and sustained serious and permanent physical injuries. The Los Angeles Ladder Company, defendant and appellant here, manufactured the ladder on a date subsequent to January 1, 1929, and sold it to said employer on March 8, 1929.

Plaintiff brought this action against said defendant, charging it as manufacturer with negligence in the construction of the ladder and further charging that the ladder was such an instrumentality as to be imminently dangerous when defectively constructed or assembled. Plaintiff had verdict and judgment thereon. Defendant moved for a new trial and also for judgment notwithstanding the verdict. Both motions were denied and defendant later appealed from the judgment.

█ We are aware that a ladder is a rather simple tool and that no contractual privity existed between plaintiff and defendant. We further realize that the common law, as a general rule, throws a strong arm of protection around the manufacturer, warding off claims of third persons, not direct purchasers, for personal injuries sustained from use of articles so manufactured and sold by him. But we are at the same time in full sympathy with the acknowledged exceptions to this general rule and also with the trend of judicial decisions which extend these exceptions to include additional classes of cases not heretofore included. The language of Mr. Justice Cardozo, while a member of the New York Court of Appeals, in the case of *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382 [111 N. E. 1050, Ann. Cas. 1916C, 440, L. R. A. 1916F, 696], seems appropriate:

"We hold, then, that the principle of *Thomas* v. *Winchester*, 6 N. Y. 397 [57 Am. Dec. 455], is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new

tests, then irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. That is as far as we are required to go for the decision of this case. . . . In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.''

The same learned justice, in his work entitled ''The Growth of the Law'', comments further upon this subject as follows (The Growth of the Law, 1924 ed., p. 77): ''The development is merely a phase of the assault, now extending along the entire line, upon the ancient citadel of privity. In New York, there is a remedy in tort, regardless of privity against the negligent manufacturer, where the subject of the manufacture is likely to be dangerous to life (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382 [111 N. E. 1050, Ann. Cas. 1916C, 440, L. R. A. 1916F, 696].) The things classified as dangerous have been steadily extended with a corresponding extension of the application of the remedy. They began with *Thomas* v. *Winchester*, 6 N. Y. 397 [57 Am. Dec. 455], and the sale of poisons. They have been widened until they include a scaffold (*Devlin* v. *Smith*, 89 N. Y. 470 [42 Am. Rep. 311] or an automobile (*MacPherson* v. *Buick Motor Co., supra*), or even pies or cakes when nails and other foreign substances have supplied ingredients not mentioned in the recipes of cook books.''

This same tendency in England is noted in a recent decision by the House of Lords, styled *Donoghue* v. *Stevenson,* (1932) Appeal Cases, 562, where the subject received extensive consideration and the doctrine announced by Mr. Justice Cardozo was approved.

This court has marched in complete step with these advancing judicial pronouncements. Witness among others the recent case of *Dahms* v. *General Elevator Co.*, 214 Cal. 733 [7 Pac. (2d) 1013], where it is said (p. 740): ''In many jurisdictions, in recent years, there has been a marked tendency to extend the exception under discussion beyond inherently dangerous articles to those articles which are

reasonably certain to place life and limb in peril if negligently prepared or constructed (citing cases)." See, also, to the same effect: *Hall* v. *Barber Door Co.*, 218 Cal. 412 [23 Pac. (2d) 279], *Kolberg* v. *Sherwin-Williams Co.*, 93 Cal. App. 609, 613 [269 Pac. 975], and *Cliff* v. *California Spray Chemical Co.*, 83 Cal. App. 424 [257 Pac. 99].

■ We feel that no good purpose will be served by attempting to review at length the wide range of discussion that has attended the progressive development of the rules of law now governing causes involving this subject. Sufficeth it to say that from the principles stated we easily conclude that it was a proper question of fact for the jury as to whether or not an extension ladder of recent manufacture, when used as plaintiff was using it, became, because of defective construction or assembling, an instrument imminently dangerous to human life or limb.

But whether or not, as contended by appellant, the evidence shows, as a matter of law, freedom from actionable negligence in the construction and assembling of said ladder, presents a question not so easily resolved. In this behalf the court instructed the jury as follows: "Because they are alleged by the plaintiff to be true, and are not denied by the defendant, the following facts are deemed to be proved: That if there were any defects in material, workmanship or construction, such defects were not possible of discovery by general observation or superficial examination; that if any such defects existed, they were hidden, latent and invisible. . . . "

The effect of this instruction was practically to exonerate the plaintiff from the charge of contributory negligence, but it also had the effect of strengthening defendant's claim that it used ordinary care in the manufacture of said ladder. It practically reduced the case to one where the judgment of an expert in the texture of woods alone might have detected infirmity in the rung. Whether the standard of manufacture in the trade required the employment of such an expert does not clearly appear nor does it clearly appear that the employees of defendant were not such experts. Moreover, the experts who testified for plaintiff were so shaken and weakened upon cross-examination as to practically demonstrate the unreliability of their opinions.

The undisputed facts shown by defendant respecting manufacture of the ladder were as follows: Defendant has been engaged in the ladder manufacturing business for many years, employing competent and skilled workmen, mechanics, laborers and foremen. It constructs annually some 200,000 ladders of the type here involved. Apparently in constructing the ladder and finishing the rung in question, defendant pursued its customary course substantially as follows: The rung was one of many thousands included in a carload purchase from a lumber and hardwood dealer of good repute in the trade, the quality of whose wares is generally respected; when delivered it had been cut to size so that it was only necessary for defendant to fix the ends to fit into the sides of the ladder. The said carload was ordered by sample, selected from a number of samples of good material by defendant's general manager, who had had some twenty years' experience in the purchasing of ladder material. Upon arrival of the carload, the material and samples were compared by said manager and two experienced men; they were found to tally; hence, the lumber was accepted, went into stock and from it were finished the rungs of the ladder in question. Before going into stock, however, different tests were made on a set of samples taken from the lot. One or two pieces were put in a vise and struck with a ten-pound sledge for a test of strength. Another piece was taken and put between two side rails; a rope was thrown over the rung from which a platform was hung and a test of 800 pounds was put on it.

The ladder in question was made from said stock subsequent to January 1, 1929, or within a few months from the time of its purchase. In process of manufacture the ladder, and said rung, went through many hands. The rung was tenoned to fit into the ladder, that is, the ends were shaped and slightly reduced to fit the sides. In this process the rung was handled three times by the operator, the grain of wood was observed and the weight test given. Any brashness or defect, if obvious, would have been detected by the feel in the "heft" of the piece. It was customary to handle one rung at a time in process of tenoning. Thereafter the rungs went to another department to be tested and placed. As each rung was placed, it was nailed in and the sound,

when it was struck with a hammer, would indicate any defect or unsoundness. After being assembled, the ladders were again inspected in the shipping and sales department. It was customary to follow each of the above-mentioned steps in the construction of the ladders and to have an experienced operator for each and every handling of each and every rung thereof. The ladders were sold unpainted, with nothing covered or concealed.

The showing of plaintiff contrary to that above set forth was: He produced two expert witnesses who in substance stated that the rung was faulty and that they could have discovered its brash substance by an inspection thereof; that had they been manufacturers they would have rejected it as unfit ladder rung material and, moreover, that an ordinary mechanic or workman would not have been able to detect its infirmity. This evidence was developed largely upon cross-examination by defendant's attorney, his theory evidently being that if it took experts in wood textures to discover the defect, then defendant could not be charged with lack of ordinary care in the premises. Both of said experts, however, were put to a practical test, on cross-examination, by exhibiting to them for their inspection and judgment, certain specimen rungs designated as exhibits A, B and C. Witness Rigelsberger testified that exhibit A was a brash piece of wood and unfit for use and that exhibits B and C were tough, strong and reliable pieces of wood. Witness Wohlman testified that exhibit A was a good piece and that exhibit C was brash and unfit. Exhibit A was then put to a weight test and not only stood the standard test of 800 pounds, but actually stood 936½ pounds before fracturing. Exhibits B and C also withstood the 800-pound test successfully. As already noted, neither party produced evidence setting up the standard of care obtaining among manufacturers of ladders. This standard may or may not require the submission of each finished product to the judgment of an expert, experienced in the classification of textures of woods. We are therefore hesitant to apply the rule of substantial conflict of evidence to this verdict.

It is not necessary, moreover, to definitely declare as a matter of law the absence of proof of negligence for we are clearly of the view that many of the instructions of the trial court to the jury were so erroneous and confusing as

to require a reversal of this judgment. For instance, plaintiff's instruction No. 11 was as follows:

"It is true as a matter of law that cases may arise in which without the privity of contract, breach of duty arising as a matter of law may be imputed to the defendant. If you find from the evidence that the accident happened through the character of the ladder being. imminently dangerous and plaintiff was injured because of the imminently dangerous character of the ladder without knowledge on his part of the imminently dangerous character thereof, and if you find that plaintiff himself was not guilty of contributory negligence proximately related to the accident in question, you will find a verdict in favor of the plaintiff."

This was a so-called formula instruction, but it omitted the rule of proximate cause. More than this, it did not require that negligence of defendant be shown at all, but charged it with liability practically as an insurer, it being only necessary to show that the ladder was in fact inherently dangerous and of which fact plaintiff was ignorant.

Another formula instruction requested by plaintiff and given was No. 14, as follows: "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If, to the element of danger, there is added knowledge that the thing will be used by persons other than the purchaser, and used without due test, then, irrespective of any privity of contract the manufacturer of this thing of danger is under duty to make it carefully. And if you find from the evidence that the defendant did not ·construct the ladder carefully, it breached a duty it owed to plaintiff and you will consequently find in favor of the plaintiff."

That instruction omitted both contributory negligence and proximate cause and predicated liability solely upon a failure to construct the ladder "carefully" without attempting to define an applicable standard of care. It assumed that the ladder was an instrument of danger, which was a question of fact for the jury.

Again, at the request of plaintiff, the court, after declaring in instruction No. 20 and the first part of instruction No. 21, the warranty undertaken by a manufacturer with a purchaser respecting latent defects, used the

following language: "If you find, however, that no contractual relationship existed between the plaintiff and defendant, and therefore, the warranty above mentioned is not applicable, I further instruct you that regardless of the warranty and regardless of contractual relationship between the parties, the defendant is liable if the article is imminently dangerous, and that fact is unknown to the plaintiff who is injured as a result of such imminently dangerous character of the article."

This instruction seems clearly to charge defendant as an absolute insurer and to emphasize the fact by contrasting this liability with that of the warranty of a manufacturer to his purchaser.

█ In apparent contradiction of the above, the court, at whose request it is not shown, instructed the jury as follows:

"Instruction No. 42. If you find from the evidence that defendant had no knowledge of any defect in the ladder that would render it inherently dangerous, your verdict will be for defendant."

"Instruction No. 46. If you find from the evidence that the ladder was sold to plaintiff's employer and that it was in fact defective and inherently dangerous when sold; and if you also find from the evidence that defendant believed it to be free from defects and not inherently dangerous, your verdict will be for defendant."

"Instruction No. 47. Unless you find from the evidence that defendant concealed from plaintiff the danger arising from defects in material, workmanship or construction of the ladder, your verdict will be for defendant."

Having in mind the state of the evidence, as above noted, we think the jury should have had a clearer and more accurate statement of the law applicable to the case. We are of the view that the defendant suffered material prejudice from this failure. We say this too notwithstanding the fact that contributory negligence and proximate cause were, in other parts of the charge, properly defined.

Judgment reversed.

Shenk, J., Waste, C. J., and Thompson, J., concurred.

LANGDON, J., Dissenting.—I dissent. The majority opinion holds that a duty of care was owed to plaintiff, and the only remaining question is whether the jury were justified in finding a violation of such duty, that is, in finding that the dangerous condition of the ladder was a result of negligence on the part of defendant. The only defect was in the rung. It was made of oak, a wood generally approved for the use to which it was put, but the particular piece was "brash" or brittle, and incapable of supporting any substantial weight. It had been purchased by defendant from a concern in Arkansas as part of a carload lot of over 100,000 rungs. The evidence shows that less than a dozen rungs out of the carload had been taken out and specially examined for defects, and that the only other testing was by the observation of the workmen who assembled the ladders. If they felt, in handling a rung, that it was too light, a sign of brashness, they would discard it. The rungs of the assembled ladders were also struck with a hammer to ascertain defects through the sound. It therefore appears that no scientific test was made of each rung, either prior to or after its insertion in the ladder, the matter being left to the ordinary observation of the workmen. Whether this constitutes negligence depends upon an answer to two questions: Could the workman accurately determine brashness in wood through observation; and could an expert discover it by some reasonable and not impracticable test? In view of the settled rule limiting the power of an appellate court to reach a conclusion on the factual question of negligence different from that reached by the jury, I am of the opinion that the evidence, coupled with legitimate inferences, makes out a case for the plaintiff. Plaintiff's witnesses, properly qualified as experts, testified that the ordinary mechanic or mill workman could not, by simple observation, determine the strength of the wood; and that an expert, by observation of the ends, as cut, could make such a determination. Whether the cross-examination of these witnesses weakened their testimony is also, of course, a question for the jury.

In the construction of an article which, when used, may if defective become highly dangerous to human life, I think the evidence shows too low a degree of care. Conceding

that the jury may not arbitrarily set a standard beyond that recognized in the community, it does not follow that the customary practice of the defendant, which indicates some degree of care, sufficiently meets the standard. The danger to human life involved in the use of a defective extension ladder was such as to require a higher degree, and the jury's verdict therefore finds support in the evidence. (See 20 R. C. L., sec. 18; 19 Cal. Jur. 579.)

The defects in the instructions were all cured by proper qualifying instructions, and I cannot agree that the jury were in any way confused by them as to the simple issue of negligence presented by the facts.

I think the judgment should be affirmed.

Curtis, J., and Seawell, J., concurred.

Rehearing denied.