## LIGGETT & MYERS TOBACCO CO. v. DE LAPE.

### No. 9224.

Circuit Court of Appeals, Ninth Circuit.

Jan. 26, 1940.

Rehearing Denied March 7, 1940.

Frank P. Doherty and William R. Gallagher, both of Los Angeles, Cal., for appellant.

Fred Mansur and Austin E. Longcroft, both of Los Angeles, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

· STEPHENS, Circuit Judge.

Appellee David E. De Lape, plaintiff, recovered judgment in tort against appellant Liggett & Myers Tobacco Company, a corporation, defendant. This appeal is from that judgment.

The case was begun in the California Superior Court and was removed to the United States District Court because of diversity of citizenship of the parties, and was tried to the court without the aid of a jury upon stipulation of the parties. The cause was tried and submitted for decision upon a stipulation of fact, written statements and depositions. The amended complaint alleges that the appellant was in the business of manufacturing cigarettes and that it did manufacture a certain cigarette in such a negligent, careless and unskillful manner as to cause it to explode when lighted, causing injury and damage to appellee. It was alleged that the exploding cigarette was negligently, carelessly and unskillfully put up, packed and sold in a sealed package and was carelessly placed or suffered to be placed in market for sale. Appellant generally and specifically denied the allegations by its answer, and affirmatively therein alleged that in the manufacture of all of its cigarettes it used the most modern and approved methods and utilized all known tests and precautions to prevent the introduction of foreign or deleterious matter into them. It is also alleged by way of an affirmative defense that appellee was guilty of contributory negligence by permitting the cigarette he tried to smoke to come into contact with certain explosive gases and substances and that thereafter he lit and smoked it in close proximity to explosive gases and substances, proximately causing the alleged explosion and any consequential personal injuries which may have been sustained by appellee therefrom.

The court found that appellant "negligently, carelessly, and unskillfully, manufactured, put up, packed and sold, * * * a certain cigarette which was carelessly placed, or suffered to be placed upon the market for sale to the general public in the State of California", and that certain injuries which it found to have resulted from the explosion were due to appellant's carelessness and negligence.

For a clear understanding of the incident, we quote from appellee's deposition:

"* * * Stone [a companion] opened a new package of [appellant's brand of cigarettes] * * * and * * * handed the package to me, and I took one out, and Mr. Stone lit a match, and when he held it to the cigarette I drew on it, and I saw some sparks, tiny sparks come out, but I didn't mind that because I had seen that happen in cigars and pipes. So I drew on it again, and the fire went in my mouth, on my lip and tongue. And I took it out as quick as I could, and I had it * * * just out of my mouth, just clearing my moustache, as near as I could remember. And then there was quite a lot of fire came out of the cigarette, and to me it seemed—I don't know, maybe in my fright I inhaled—I was frightened of course—and it burned my nose, this side of my nose, and burned this half of the moustache nearly off, and scorched the face a little. * * * Yes, and a little on the other side of the nose, just a little. My wife screamed, 'Put it out'. I put my hand on my moustache which was burning and put it out, * * *."

Later, appellee testified that the flame looked to be three inches or more in diameter and that, "There was no noise except like a firecracker that didn't detonate. what the children call a 'whizzer'. * * * The tobacco seemed more or less charred all the way through the cigarette, from the lighted end to the mouth end."

Appellee also testified that after the explosion he examined the cigarette under a microscope and discovered this charring and the paper burned in small spots from inside out.

There was no testimony of any kind rebutting the details of the incident as related by appellee and by Edward Leo Duffy who witnessed it, and who gave testimony substantially the same as appellee's. We take it, as did the trial court and as do both parties in their briefs, that the quoted testimony substantially covers the incident.

The interim between the manufacture of the cigarette and its attempted use by appellee is covered by a statement appearing in appellant's opening brief, which is entirely consistent with the evidence: "Stone had theretofore purchased a carton of cigarettes manufactured by appellant and during the conversation produced a new, unopened package of cigarettes which had formed part of the carton. After opening the new package Stone took a cigarette out of it and handed the package to the appellee who also took from it a cigarette

and placed the same in his mouth. Stone thereupon struck a match, lit his own cigarette and then applied the lighted match to appellee's cigarette."

It was stipulated at the trial that Dr. Paul M. Gross, Professor of Chemistry, would, if called, testify that the process used in the manufacture of appellant's cigarettes was uniform in all of its factories and branches where its cigarettes were made; and that such process was the one in use prior to the accident and is now (Nov. 2nd, 1938) the one in use.

Dr. Gross in his deposition, after testifying to his qualifications as a chemist and as to his position as Professor of Chemistry at Duke University, testified that he was familiar with the manufacture of appellant's cigarettes and with the general nature and character of the ingredients and the general process of their manufacture. He then testified in detail as to the process used and that the care taken at all times to protect the purity of the cigarettes manufactured and to prevent any foreign substances from getting into them was the best that was in general use in the manufacture of cigarettes.

Mr. Edward Tipton's statement introduced into evidence by stipulation recited the particular methods used and inspections made in the California factory. No claim is made that there was any negligence in the process generally followed in the appellant's factories.

Appellant's claim that the explosion was nothing more than the flaring of the match upon the face of appellee as the cigarette was lighted by his companion cannot be sustained, since the recital of the incident by appellee and his companion is inconsistent with such theory and remains unrebutted and was accepted as the truth by the trial court. There was no evidence in the case supporting the allegation that the cigarette was exposed by appellee to explosive gases before or at the time of lighting it, save alone the match incident. The evidence appeals to us as it did to the trial court that the carton and package in which the exploding cigarette reached appellee were as they had left the factory, and no attempt to claim otherwise appears in appellant's brief. The evidence is all one way that the cigarette reached the smoker in the same condition that it had left the factory. As it left the factory, then, it contained a foreign substance which broke into flame as the match was applied, and

certain injuries resulted. Appellant answers in effect, that even if this be true, still it is not liable because negligence has not been proved. Appellee admits that the judgment cannot be sustained in the absence of negligence, but relies upon the doctrine of "res ipsa loquitur" to establish that essential. If this doctrine is applicable negligence has been established.

In Michener v. Hutton et al., 203 Cal. 604, 265 P. 238, 59 A.L.R. 480, where a carpenter was injured by a falling piece of pipe under the control of the defendant, the court said, 203 Cal. at page 605, 265 P. at page 239, 59 A.L.R. 480:

"It is elementary that the maxim, 'Res ipsa loquitur,' translated means simply, 'The thing * * * speaks for itself.' The courts of this state have long since adopted the rule as expressed in 1 Shearman and Redfield on Negligence (6th Ed.) p. 132, viz.: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care.' [citing cases]

"Of course, to justify the application of this doctrine in any case, the circumstances of the accident must be such as, unexplained, afford reasonable evidence of want of care in respect for which the defendant is liable in the particular action. [Citing many cases in support thereof, among them being Sheridan v. Foley, 58 N.J.L. 230, 33 A. 484, from which the court quotes]: 'While it is true, as a general principle, that mere proof of the occurrence of an accident raises no presumption of negligence, yet there is a class of cases where this principle does not govern—cases where the accident is such as, in the ordinary course of things, would not have happened if proper care had been used. In such cases the maxim, 'res ipsa loquitur,' is held to apply, and it is presumed, in the absence of explanation by the defendant, that the accident arose from want of reasonable care.' "

■ There are many cases in various courts throughout the country in which the res ipsa doctrine has been applied where a deleterious foreign substance has been found in canned or bottled food or drink. In such cases the manufacturer has gone to great lengths to show by evidence that he has taken the legal degree of care in gen-

eral in the processes used. The courts have not been satisfied with this answer. They have been cognizant of the fact that such proof is always generalization and that evidence of negligence in such circumstances is ordinarily not available to the injured person although negligence may have induced the injury. The presence of the thing leaves open no reasonable hypothesis that the objectionable presence occurred notwithstanding uninterrupted care. See annotations in 4 A.L.R. 1559 and 47 A.L.R. 148. The doctrine is not applied where the causa injuria may have originated from sources foreign to the manufacture of the thing sold. 1 Anno. 4 A.L.R. 1559; 47 A. L.R. 148. Such cases are well illustrated by Stewart et al. v. Crystal Coca Cola Bot. Co., 50 Ariz. 60, 68 P.2d 952, wherein a bottle containing a carbonated drinking fluid exploded in an ice chest. There were many reasonable hypotheses for such breaking of the bottle. Upon the same basis the cases of Snow v. Harris, 1919, 41 Cal.App. 34, 181 P. 676 and Galveston, H. & S. A. Ry. v. Chojnacky, 1915, Tex.Civ.App., 180 S.W. 141, were determined. Where, however, the evidence is sufficient to sustain a conclusion that a foreign deleterious substance directly causing injury upon use was in the article when it left the manufacturer and was not detectable by the consumer in the ordinary preparation of the article for use, the reason for the res ipsa rule is fully present. Payne v. Rome Coca-Cola Bot. Co., 10 Ga.App. 762, 73 S.E. 1087.

The appellant contends that the res ipsa rule does not apply unless the very thing causing the injury has been identified or isolated as in the "mouse in the bottle" cases. The theory in such cases is that the trial court or jury having knowledge of the thing causing the injury is in a position to judge whether or not the care required would have prevented the objectionable presence or whether or not due care was actually used. There can be no doubt but that the discovery of the objectionable thing is an aid to the solution of the problem, but we doubt the soundness of the theory that the deleterious thing itself must be discovered before the rule can apply. We think if the unusual action of the ordinarily harmless article is such as to inform the trial court or jury that a foreign substance was present and that its presence cannot be accounted for upon any reasonable hypothesis but negligence, the tryers of fact can infer negligence. It is not so much that the identical thing was found

which creates the presumption of negligence as it is that the finding aids the court in its duty to determine whether or not there was negligence.

There is neither proof nor judicial knowledge, nor indeed any claim, that tobacco or any of the other materials used in cigarettes ever carry an explosive quality into the factory. Judges or juries would have to close their eyes and minds to a near universal knowledge that this does not happen. It seems to us that the trial court committed no error when it decided that such explosive substance that did get into this cigarette got in at the factory and while the cigarette was under the control of the manufacturer. The manufacturer has not explained, and not having explained, in the circumstances of this case, the court could and correctly did conclude that the presence of the foreign substance resulted from the manufacturer's negligence.

Appellant next argues that even assuming that negligence has been established, it is not liable to the appellee in the absence of a contractual relationship between them. True, it is the general rule in regard to damages suffered through the use of a manufactured article that a manufacturer is not legally answerable in the absence of such a relationship. To this rule, however, the courts have quite generally recognized as an exception, damages resulting from the use of articles put upon the open market which are themselves inherently or imminently dangerous. 24 R.C.L. 512 et seq. Huset v. J. I. Case Threshing Machine Co., 8 Cir., 1903, 120 F. 865, 61 L.R.A. 303.

The law of California, which we apply (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487) is in harmony. The Supreme Court of that state in its opinion in Kalash v. L. A. Ladder Co., 1 Cal.2d 229, 34 P.2d 481, 482, quotes with approval from MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696, Ann. Cas.1916C, 440, "We hold, then, that the principle of Thomas v. Winchester (6 N.Y. 397, 57 Am.Dec. 455) is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the

602

thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. * * * In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty."

And the same California court spoke again on the subject in Dahms v. General Elevator Co., 214 Cal. 733, 7 P.2d 1013, 1016, "To state the proposition clearly and distinctly, it is that, although a machine may not be in its nature inherently dangerous, yet, if it is made so by the neglect of a manufacturer having notice and knowledge that it is to be used by others than the purchaser, and injury results to others than the purchaser, directly traceable to that negligence, such manufacturer is liable to the person injured because of that negligence. * * * It is to be noted that liability in such cases is predicated on the negligence of the manufacturer * * *. He is in no sense an insurer."

We have no hesitancy in sustaining the trial court in its conclusion that the California Supreme Court, if the question were before it for decision, would hold that a cigarette, intended as it is for burning in close proximity to the face, falls within the exception to the rule of nonliability above referred to.

We have now to consider the sufficiency of the evidence to support the award of damages. The testimony as to doctors' bills and medicines is not satisfactory. There is an expression by appellee that his doctor bill since the accident has amounted to "hundreds of dollars" but he nowhere says that this indefinite figure was expended or how much of it, if any, he was under obligation to pay. The testimony is sufficient that he paid $25 or more to one doctor and as much as $50 to another. The judgment for these items will be modified to $75.

We are of the opinion that the court's estimate of $2,000 for personal injuries is reasonable. The appellee himself testified to burns in the nostril and around the moustache. He claims to have breathed the flame or gas from the cigarette and that his health has been shattered to such an extent that he has since been unable to do any sustained work and that the explosion was a severe shock to his mental and physical systems. There is supporting evidence. There is also evidence which tends to minimize the injury. We think a recital of such evidence would serve no useful purpose.

The trial court is instructed to reduce the sum allowed for "medical expenses, nursing and drug sundries" from $250 to $75. As so modified the judgment is affirmed. The appellant shall bear three-fourths of the costs, and the appellee shall bear one-fourth of the costs.