[Civ. No. 12426. Second Appellate District, Division Two.—February 26, 1940.]

ETHEL GUTELIUS, Respondent, v. GENERAL ELECTRIC COMPANY (a Corporation), Appellant.

Meserve, Mumper & Hughes and Roy L. Herndon for Appellant.

Samuel A. Rosenthal for Respondent.

WOOD, J.—Plaintiff recovered a judgment for damages for injuries which she suffered when her hair became entangled in a roller of a washing machine wringer which had been manufactured by defendant. The appeal is taken by defendant from the judgment, which was rendered by the court sitting without a jury.

Plaintiff bases her claim for damages upon her allegation of negligence in the manufacture of the washing machine in that the gear shift mechanism, by which the revolution of the rollers of the wringer was controlled, was defective. The trial court found that plaintiff ''while using the said washing machine, caught the end of her long hair around the lower roller of the said machine and attempted to turn the shifter lever into its neutral position in order to stop the said rollers and release her hair; that it is true that as a result of the negligent, careless and unlawful manner in which the defendant, through its agents, servants and employees, had manufactured the said washing machine and the clutch and shifter lever of which it was a part, that the said shifter lever was caused to stick, causing the lower lever to continue revolving, as a result of which the plaintiff's hair became entangled around the said lower roller, whereby and because whereof the plaintiff Ethel Gutclius sustained personal injuries.'' Defendant attacks this finding as being defective in that there is no finding on the issue of the proximate cause of plaintiff's injuries.

The washing machine involved in the accident was purchased by plaintiff on August 6, 1937, and was used by plaintiff not less than two or three times weekly during the ensuing period until the date of the accident, September 20, 1937. During this period plaintiff had difficulty in using the machine and about ten days prior to the accident the dealer who had sold the machine, Mr. Stine, called at plaintiff's request for the purpose of ascertaining the cause of the peculiar noise which the machine was making. At this time plaintiff advised Mr. Stine that the shifter lever was inclined to stick and that it operated with considerable difficulty. Plaintiff

testified that Mr. Stine used a screwdriver to loosen and tighten a screw in the shifter lever. Plaintiff further testified that after the visit from Mr. Stine the shifter lever continued to stick and function with difficulty; that thereafter and on an occasion about a week before the accident she attempted to operate the shifter lever but it stuck and could not be moved, and on this occasion it became necessary for her to pull the plug from the wall in order to disconnect the electric power and thus stop the wringer. After this occurrence plaintiff made no inquiry of the dealer or anyone else to ascertain the cause of the difficulty. Notwithstanding these experiences plaintiff continued to use the machine and wringer until the date of the accident.

At the time of the accident plaintiff was wearing her hair shoulder length and it was loosely combed. She testified: "Q. As you reached down into the tub, the bulk of your hair was down over your head, and down in the tub, with your hair hanging— A. Yes, sir. It had to go with my head." Plaintiff further testified that when she discovered that her hair was caught she struck the emergency release with her hand, thinking that the emergency release would stop both rollers and set her hair free. The emergency release functioned properly and the upper roller was immediately released and disengaged, but the lower roller continued to revolve and plaintiff's hair was wound around it. Plaintiff then attempted to stop the wringer by operating the shifter lever but the shifter lever was stuck and would not move. Her head was being drawn against the roller and in order to stop the machine she jerked the plug from the socket and disconnected the power. By this time her scalp had been painfully injured.

After the accident plaintiff summoned a mechanic who examined the machine and filed from the clutch a "burr", approximately the size of the rubber on an ordinary lead pencil, which, according to the mechanic's testimony, was the cause of the refusal of the shifter lever to function properly.

█ Plaintiff relies upon the rule that the manufacturer of an article which is reasonably certain to place life and limb in peril when negligently made, must be held liable for damages caused to persons using the negligently made article in the manner in which it was intended to be used. Such was the rule followed in the leading case of *MacPherson* v. *Buick*

*Motor Co.*, 217 N. Y. 382 [111 N. E. 1050, Ann. Cas. 1916C, 440, L. R. A. 1916F, 696]. In *Kalash* v. *Los Angeles Ladder Co.*, 1 Cal. (2d) 229, [34 Pac. (2d) 481], a case in which a defective rung on an extension ladder collapsed, injuring a workman, the MacPherson case was referred to with the "full sympathy" of the court. It was held that there was a "question of fact for the jury as to whether or not an extension ladder of recent manufacture, when used as plaintiff was using it, became, because of defective construction or assembling, an instrument imminently dangerous to human life or limb". But the rule holding the manufacturer liable for negligence in construction is subject to the qualification that the user of the manufactured article must be without knowledge of its defective condition. In Bohlen's Studies in the Law of Torts at page 116, the author says: "It seems quite clearly established that where the purchaser, actually knowing the defective nature of the article, puts it to a use for which it is unfit and unsafe, any injury received therefrom is due to his misuse and not to the act of him who created the defect." The qualification of the general rule was recognized in *Stultz* v. *Benson Lumber Co.*, 6 Cal. (2d) 688, 689, 694 [59 Pac. (2d) 100], where Mr. Justice Shenk, speaking for the court, said: "Furthermore the pertinent principles hereinbefore referred to are predicated on the knowledge or duty of awareness of the defect on the part of the manufacturer or seller and his failure to warn the purchaser of such defect, and the absence of similar knowledge or duty on the part of the purchaser. (45 Cor. Jur., p. 892, sec. 331, and cases cited.)"

In the case under review it is not contended that defendant had any knowledge or actual notice of the existence of any defect in the washing machine. On the other hand, it is manifest from plaintiff's own testimony that she knew from her own experiences that the shifter lever operated only with difficulty. A few days prior to the accident she had had an experience with the wringer similar to the one which caused her injuries on September 20th, at which time the shifter lever did not function and she was obliged to pull the plug from the socket in order to turn off the electric power. She testified: "A. When I would be putting the clothes through the wringer, sometimes, I would have to stop, and I could hardly turn what you would call the shifter lever." The only

part of the machine claimed to have failed to function properly at the time plaintiff was injured was the shifter lever. The conclusion is irresistible that she was fully informed of this condition. It follows that she, having continued to operate the machine with such knowledge, is not in position to recover from the manufacturer.

The conclusion at which we have arrived as hereinabove set forth makes it unnecessary to consider the contention of defendant that ''a wringer with a gear shift that may refuse to operate'' is not an instrumentality coming within the rule above discussed.

The judgment is reversed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1940. Carter, J., voted for a hearing.