[Civ. No. 14255. First Dist., Div. One. June 26, 1950.]

PETER QUIRICI, Appellant, v. L. E. FREEMAN et al., Respondents.

DiMaria & DiMaria for Appellant.

Leon Boro and Matt Goldstein for Respondents.

SCHOTTKY, J. pro tem.—Plaintiff Peter Quirici, doing business as the Stanford Painting Company, purchased from the Hoffmann-Raissle Paint Co. approximately $800 worth of primer labeled as "Stacoat, 4 in 1, outside undercoater primer, white," manufactured by defendants L. E. Freeman and Sherre G. Freeman, doing business as the Stacoat Paint & Varnish Co., and used such primer on 55 homes and buildings in Palo Alto and vicinity. Within six months the paint applied over this primer began to peel and flake off so as to render the buildings unsightly and to expose to the elements the wood to which it had been applied. Thereafter plaintiff filed an action for damages against L. E. Freeman, Sherre G. Freeman, Stacoat Paint & Varnish Co., Gunther Hoffmann, Arnold Raissle, Hoffmann-Raissle Paint Co. (and various Does). The first amended verified complaint contains six causes of action. The last four counts apply only to the three last mentioned defendants, the retailers, and have gone to trial so are not involved here. The trial court made an order sustaining a general demurrer to the first two causes of action without leave to amend, and a judgment of dismissal was entered as to said manufacturing defendants. Plaintiff has appealed from the order sustaining the demurrer and from said judgment of dismissal. No appeal lies from an order sustaining a demurrer, so the appeal therefrom must be dismissed.

The first cause of action alleges that L. E. Freeman and Sherre G. Freeman were the president and secretary, respectively, of the Stacoat Paint & Varnish Co.; that as "paint chemists they prepared the formula for the composition of the product hereinbelow described as: 'Stacoat, 4 in 1, outside undercoater primer, white,' and for all shipments of said

so-called 'primer' which came into possession of the plaintiff; likewise, that at all times hereinmentioned as such chemists they supervised the manufacture of said Stacoat outside undercoater primer and in particular all shipments coming into the possession of the plaintiff; . . . that said formula was totally inadequate, defective and erroneous and caused the manufacture of an adulterated so-called outside undercoater primer, as hereinbelow alleged; . . . [that they] were negligent and careless thereby in relation to the property rights of the plaintiff as a painting contractor as hereinbelow alleged, and said negligence and carelessness was a direct and proximate cause of all the damages hereinbelow alleged to have been suffered by the plaintiff; and moreover, said defendants wilfully and wantonly and maliciously committed said acts knowing full well the inadequacy, deficiencies and errors of said formula and that it would produce an adulterated so-called outside undercoater primer in the terms of the statute hereinbelow referred to and knowing that by so doing they would damage, as alleged in this cause of action, the property rights of the plaintiff and persons in his position of painting contractor purchasing said so-called primer; that said wilfulness and wantonness in relation to said acts of defendants and said acts of defendants themselves alleged in the herein paragraph were a direct and proximate cause of the damages alleged in the herein cause of action to have been suffered by the plaintiff.''

Paragraph V of the first count alleges that there are two functions of any primer, (1) to provide adhesion for subsequent coats of paint and (2) to act as a binder or seal for subsequent coats of paint so as not to cause the binder of the coat of paint to seep into the wood and away from the pigment of the paint; and that the Stacoat primer manufactured by the defendants and bought by plaintiff failed to perform either of these functions due to the presence in it of zinc oxide, which no primer should contain, and the total absence of basic carbonate white lead and titanium dioxide, which are necessary in any primer, and that as a result the Stacoat primer was ''an imitation of a primer and not an actual primer.''

Paragraph VI of the first count alleges that the adulteration of the so-called primer was done wilfully and maliciously by and through carelessness and negligence, and paragraph VII alleges that such adulteration was in violation of chapter 6 of division 8 of the Business and Professions Code, which is incorporated in the complaint, and that plaintiff is one of a class which the statute was intended to protect and the provisions

thereof create a civil liability: Further paragraphs of the first cause of action allege the purchase of the primer from the Hoffmann-Raissle Paint Co.; its application to 55 homes and buildings; the peeling and flaking off of paint within a few months when it should have lasted at least five years; the complaints of owners of buildings so painted; the cost of repainting, and the loss of profits and of good will.

The second cause of action alleges the superior knowledge of the defendants as to the chemical components of said primer; the intentional failure of the defendants to include the specifications and ingredients of the primer on the label of the can "in order to conceal from persons in the position of the plaintiff and to conceal from plaintiff in particular the adulteration of said Stacoat primer, its lack of the necessary ingredients hereinabove mentioned and its inclusion of the improper ingredient of zinc oxide"; that the label had the designation "Stacoat, 4 in 1, outside undercoater primer, white"; that the defendants knew that the plaintiff in purchasing the primer and making use of it "was acting under a mistaken belief that said product could perform the purposes of a primer hereinabove alleged"; that plaintiff could not reasonably have discovered the alleged deficiencies prior to the date of discovery of his damage (December 20, 1947); that plaintiff relied upon the defendants, and that the defendants knew that plaintiff would be misled to his injury if they failed to disclose the incapacity of said primer to perform the functions of a primer. It also is alleged that the defendants knew that the Stacoat primer would be represented to those in plaintiff's position that it was a primer and that they would rely upon such representations, when in fact they knew it was no primer at all and could not perform the functions of one, and that there was intent to so deceive and defraud; that it was represented by defendants as a fact and not an opinion to Hoffmann and Raissle that the Stacoat product was a primer capable of performing the functions of a primer and that the latter so represented it to the plaintiff; that such concealments and representations of defendants were made with intent to deceive and defraud plaintiff, and that plaintiff was so deceived and defrauded to his damage which the exercise of ordinary care by him could not have avoided. Total damage was set at $100,000.

A general demurrer was filed by the defendants Freeman to the first two causes of action, it being urged in the points

and authorities filed in support of said demurrer that the article manufactured was not imminently or inherently dangerous to life or property, that there was no privity of contract between them and the plaintiff, and therefore there could be no liability on the part of the third party defendant manufacturers.

The trial court evidently was of the opinion that the complaint went no further than to allege negligence on the part of the defendant manufacturers and that the complaint could not be amended so as to state a cause of action against said defendants, and sustained the general demurrer to both the first and second causes of action without leave to amend.

Section 452 of the Code of Civil Procedure provides that "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties."

And in 21 California Jurisprudence, section 30, page 54, it is stated: "So as against a general demurrer a complaint will be liberally construed with a view to substantial justice; any mere ground of special demurrer for uncertainty will be resolved in support of the complaint, and the demurrer will be overruled when the necessary facts are shown to exist, although inaccurately or ambiguously stated, or appearing only by necessary implication."

We have analyzed carefully the allegations of the first and second causes of action and are convinced that each of them states a good cause of action, and that, therefore, the general demurrer should have been overruled. Defendants and respondents cite many authorities in their efforts to sustain the ruling of the trial court, and their arguments are ingenious but not convincing. They cite the general rule as formulated by the case of *Winterbottom* v. *Wright*, 152 Eng.Rep. (Reprint) 402 (10 M.&W. 109), and *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382 [111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696], which hold that there is no liability on the part of a negligent manufacturer to another in the absence of privity, unless the article manufactured and sold is imminently or inherently dangerous to persons using the substance or article as intended. They also cite the case of *Cliff* v. *California Spray Chemical Co.*, 83 Cal.App. 424 [257 P. 99]. There the court in upholding a judgment for the defendant manufacturers stated that a motion for a directed verdict in their favor should have been granted, there being no privity of contract and "there being no testimony that the defendant

knew or had any cause to know of any dangers in the handling of the compound, or knew or had reason to know of any negligence connected with the preparation or marketing thereof, or in any manner concealed, or attempted to conceal, anything whatever that might render the use of the spray material injurious . . ." (P. 429.) The court stated the general rule of the Winterbottom case that where there is no contractual relation "recovery can only be had in tort, and then only when the compound or substance sold is imminently and inherently dangerous and such danger concealed by the seller." (P. 430.)

This rule, however, would seem to apply only where tort liability is sought to be based on negligence. The better view would seem to indicate that this is not a limiting rule and a manufacturer may be liable without privity of contract and without an inherently dangerous article in cases of fraud or in those where there is a violation of a statute designed for the user's protection.

In *Lewis* v. *Terry*, 111 Cal. 39 [43 P. 398, 52 Am.St. Rep. 146, 31 L.R.A. 220], the court reversed the lower court and directed that the demurrer be overruled where the allegations of the complaint showed that a folding wall bed had been sold to the plaintiff's landlord, which, because of its defects, collapsed on plaintiff's arm. The court said (pp. 44-45) : "But when the seller, as in the case made by the complaint before us, represents the article to be safe for the uses it was designed to serve, when he knows it to be dangerous because of concealed defects, he commits a wrong independent of his contract, and brings himself within the operation of a principle of the law of torts. 'It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may be reasonably contemplated as likely to result, and which does in fact result therefrom, to that person *or any other who is not himself at fault.*' [Citing cases.] . . .

"The fact insisted upon by respondent that a bed is not ordinarily a dangerous instrumentality is of no moment in this case; if mere nonfeasance or perhaps misfeasance were the extent of the wrong charged against defendants that consideration would be important . . .; but the fact that such articles are in general not dangerous would seem to enhance the wrong of representing one to be safe for use when known to be really unsafe, for the danger is thus rendered more insidious." (Emphasis added.)

Defendants and respondents seek to distinguish the Lewis case as nonapplicable on the ground that a bed, if negligently manufactured, is imminently dangerous. In the instant case, the complaint alleges the manufacture of the primer by the defendants, that it contained zinc oxide which no primer should contain, and that there was a total absence of certain other required components of a primer. It is alleged that this was done wilfully and maliciously and that it resulted in merely an imitation of a primer, and was not a primer because it did not contain the ingredients of a primer; that the defendants nevertheless labeled it a primer and represented it as such to the retailer from whom plaintiff bought, knowing that such information would be passed on to plaintiff who would use the product under the mistaken belief that it could perform the purposes of a primer and that plaintiff and others in his position could not discover their error until already damaged.

In *Kolberg* v. *Sherwin-Williams Co.*, 93 Cal.App. 609 [269 P. 975], the court affirmed a recovery by the plaintiff where his orchard had been damaged by use of a spray containing ingredients which were inherently dangerous to orchards, and the defendant manufacturer knew of such inherently dangerous elements. There evidently were direct representations made by the defendant's agents that the compound would not injure orange trees such as in the plaintiff's orchard, but the court stated, "The liability of the defendants rests upon the sound rule that a manufacturer or seller of an article inherently dangerous to life or property is liable for injuries to the ultimate consumer who has purchased through a middleman. (17 A.L.R. 674, 683.)" (P. 613.)

Defendants and respondents contend that the injuries resulting to plaintiff here do not come within the property damage rule of the Kolberg case because the primer did not actually damage the property of plaintiff but merely failed to protect the exterior surfaces of the buildings to which it was applied. Plaintiff and appellant contends that the defendants' product was dangerous to the continued good condition of the buildings to which it was applied and that there was no distinction between the damage here and that in the Kolberg case, both being in terms of dollars and cents and not human suffering and feeling. If a so-called primer contains ingredients which cause it to fail to fulfill the purposes for which a paint primer is purchased, and as a result from its use the paint applied over it begins to peel and flake off within six months,

so as to expose to the elements the wood of the buildings to which it has been applied, it would, in our opinion, be an article inherently dangerous to property. Neither law nor equity will draw such a fine-spun distinction as respondents seek to draw.

In plaintiff's first cause of action it is also alleged, as hereinbefore set forth, that the adulteration of said primer was in violation of the Business and Professions Code, and that plaintiff is one of a class which this statute was intended to protect. Plaintiff contends that the violation of a statute as alleged in the first count creates an exception to the rule of *Winterbottom* v. *Wright, supra.* Plaintiff refers to 17 A.L.R. 705, ''g. Liability under statute,'' which reads in part as follows: ''A number of cases involving the sale of dangerous articles or substances present the further element of a sale in violation of statute. This alone would seem to be sufficient to render the manufacturer or seller liable to strangers, regardless of the fact that the article was also intrinsically dangerous, and, as a matter of fact, the cases appear to base their decisions upon the violation of statute, rather than upon the character of the article sold.''

We are convinced that the first count states a good cause of action independent of any alleged violation of a statute. If, as is alleged, defendants ''wilfully and wantonly and maliciously'' prepared and manufactured a so-called primer which they knew would not perform the function of a paint primer, and which they knew would damage the persons who used it, and if, as alleged in said first count, said primer so manufactured and sold by defendants was inadequate and was ''an imitation of a primer and not an actual primer,'' then it would be quite immaterial whether or not said primer was, in addition to its other alleged deficiencies, manufactured in accordance with the requirements of the statute.

The second cause of action incorporates most of the allegations of the first cause of action and then alleges further that defendants intentionally failed to include any specifications of the ingredients of the so-called primer on the label of the can, in order to conceal its defects and adulteration from plaintiff and others in a similar position; that defendants knew it would be represented to those in plaintiff's position that it was a primer, and that there was intent on the part of defendants to deceive and defraud.

We are convinced that the second count also states a cause

of action which is good as against a general demurrer. Indeed, it is difficult to understand how a general demurrer to either cause of action could have been sustained except upon the mistaken belief that the only issue was whether or not the primer was inherently dangerous to property. The other allegations of the complaint as to fraud and deceit and knowingly manufacturing and selling an article which the manufacturer knew to be defective and injurious appear to have been completely overlooked.

No other points require discussion. The general demurrer of defendants and respondents to the first and second causes of action should have been overruled.

In view of the foregoing, the judgment is reversed with directions to the trial court to overrule the demurrer.

Peters, P. J., and Bray, J., concurred.